**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————

| | |
|---|---|
| **DARIUS HILL,** | : |
| | : |
| **PLAINTIFF,** | : |
| | :    **Civ. Action No. 07-1894(JR)** |
| **v.** | : |
| | : |
| **DISTRICT OF COLUMBIA,** | : |
| | : |
| **DEFENDANT.** | : |

———————————————————

## DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT, OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant, through counsel, respectfully moves this Court to grant summary judgment in its favor in the above-captioned case.  As established by the accompanying supporting memorandum and the statement of material facts as to which there is no genuine dispute, the challenged administrative determinations under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. §1400 et seq., were entirely appropriate.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the
  District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Edward P. Taptich*_____
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

/s/ *Veronica A. Porter*_____
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**February 25, 2008**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| DARIUS HILL, | : |
| | : |
| PLAINTIFF, | : |
| | :     **Civ. Action No. 07-1894(JR)** |
| v. | : |
| | : |
| DISTRICT OF COLUMBIA, | : |
| | : |
| DEFENDANT. | : |

_____

## STATEMENT OF MATERIAL FACTS AS TO WHICH
## THERE IS NO GENUINE ISSUE

1.  Plaintiff is a 21-year old male who has already received a high school diploma from Duke Ellington School of the Arts. *See Administrative Due Process Complaint Notice, attached as Exhibit 1, p. 1.*

2.  On March 27, 2003, when Plaintiff was in 10th grade, a Multidisciplinary Team ("MDT") met, determined that Plaintiff was eligible for special education services as learning disabled, and developed an Individualized Educational Plan ("IEP") for Plaintiff. The IEP was to provide 3.5 hours of specialized instruction. Both Plaintiff and his mother participated in developing the IEP and signed the IEP form. *See March 27, 2003 IEP, attached as Exhibit 2.*

3.  The MDT/IEP team met again in March, 2004, and re-evaluated Plaintiff for services. The IEP notes indicate that Plaintiff "has made very good progress in English," has improved in math because he is attending class and is "doing his work and passing exams and quizzes." His math teacher indicated that Plaintiff "is doing okay, but he

could do better if he kept his concentration and focus." Plaintiff was to continue in a combined general education/special education setting. Both Plaintiff and his mother participated in the MDT/IEP meeting, and signed the IEP form. *See March 16, 2004 IEP, attached as Exhibit 3.*

4. The MDT/IEP team met for a third time in March, 2005. The MDT meeting notes indicated that Plaintiff's grades had improved as well as his reading and writing skills. Plaintiff, who was then 18 years old, participated in the meeting without his mother, and signed the IEP form. *See March 15, 2005 IEP, attached as Exhibit 4.*

5. Neither Plaintiff nor his mother informed the District of Columbia Public Schools ("DCPS") that they believed Plaintiff's IEPs were inadequate or inappropriate. Neither Plaintiff nor his mother requested a due process hearing while Plaintiff attended Duke Ellington, alleging that the special education services Plaintiff received were inadequate. *See Complaint, generally.*

6. Plaintiff graduated from Duke Ellington in June, 2005, and began attending the Art Institute of Philadelphia in the Fall. *Exhibit 4, meeting notes.*

7. On January 29, 2007, Plaintiff filed an administrative due process complaint notice seeking compensatory education, because, according to Plaintiff, his March, 2005, IEP was inadequate. *See Exhibit 1, pp. 4, 7.*

8. A hearing was held on May 1, 2007, before Hearing Officer Coles B. Ruff and a Hearing Officer's Determination ("HOD") issued May 14, 2007, dismissing Plaintiff's complaint. *See May 14, 2007 HOD, attached as Exhibit 5.*

9. Hearing Officer Ruff concluded that Plaintiff did not sustain his burden of proof that the March, 2005, IEP was inappropriate because (1) that the March, 2005 IEP

notes stated that his teachers believed he made sufficient progress and was on track to graduate; and (2) Plaintiffs cited no requirement that a student's reading ability be at a certain grade level.  In addition, Hearing Officer Ruff noted that Plaintiff obtained a 2.1 grade point average during his first year at the Art Institute of Philadelphia, and that tutoring was available at the Art Institute to assist Plaintiff with his Basic Writing course, but Plaintiff did not use it.  *Id., p. 6.*

10. On May 25, 2007, Plaintiff filed a motion for reconsideration of the HOD, claiming that Hearing Officer Ruff had an affiliation with the Duke Ellington School. *Complaint, para. 19.*  Plaintiff did not challenge the HOD on the merits.

11. On June 11, 2007, Hearing Officer Ruff granted Plaintiff's motion for reconsideration and a "de novo" hearing on the original complaint.  *See Order, attached as Exhibit 6.*

12. A new hearing was scheduled for July 3, 2007 before Hearing Officer Ramona Justice-Pegues, and an HOD issued July 17, 2007.  The HOD vacated the June 11, 2007 order for a new hearing because (1) a motion for reconsideration permits a hearing officer to either affirm or reverse his own HOD, it does not allow him to order a new hearing; (2) a party seeking to disqualify a hearing officer must present his objections in writing five business days prior to the date of the hearing; and (3) Hearing Officer Ruff's May 14, 2007 HOD was a final decision and appealable to any State court of competent jurisdiction or in a district court of the United States.  Thus, the complaint was not properly before Hearing Officer Justice-Pegues.  *See July 17, 2007 HOD, attached as Exhibit 7.*

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the
  District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Edward P. Taptich*_____
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

/s/ *Veronica A. Porter*_____
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**February 25, 2008**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

DARIUS HILL,                          :
                                      :
        PLAINTIFF,                    :
                                      :        Civ. Action No. 07-1894(JR)
        v.                            :
                                      :
DISTRICT OF COLUMBIA,                 :
                                      :
        DEFENDANT.                    :
_____

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT,
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
AND REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

INTRODUCTION AND BACKGROUND

Plaintiff is a 21-year old male who has already received a high school diploma from Duke Ellington School of the Arts.  *See Administrative Due Process Complaint Notice, attached as Exhibit 1, p. 1.*  On March 27, 2003, when Plaintiff was in 10th grade, a Multidisciplinary Team ("MDT") met, determined that Plaintiff was eligible for special education services as learning disabled, and developed an Individualized Educational Plan ("IEP") for Plaintiff.  The IEP was to provide 3.5 hours of specialized instruction. Both Plaintiff and his mother participated in developing the IEP and signed the IEP form. *See March 27, 2003 IEP, attached as Exhibit 2.*

The MDT/IEP team met again in March, 2004, and re-evaluated Plaintiff for services.  The IEP notes indicate that Plaintiff "has made very good progress in English," has improved in math because he is attending class and is "doing his work and passing

exams and quizzes." His math teacher indicated that Plaintiff "is doing okay, but he could do better if he kept his concentration and focus." Plaintiff was to continue in a combined general education/special education setting. Both Plaintiff and his mother participated in the MDT/IEP meeting, and signed the IEP form. *See March 16, 2004 IEP, attached as Exhibit 3.*

The MDT/IEP team met for a third time in March, 2005. The MDT meeting notes indicated that Plaintiff's grades had improved as well as his reading and writing skills. Plaintiff, who was then 18 years old, participated in the meeting without his mother, and signed the IEP form. *See March 15, 2005 IEP, attached as Exhibit 4.*

At no time did Plaintiff or his mother inform the District of Columbia Public Schools ("DCPS") that they believed Plaintiff's IEPs were inadequate or inappropriate. Neither Plaintiff nor his mother requested a due process hearing while Plaintiff attended Duke Ellington, or otherwise allege that the special education services Plaintiff received were inadequate.

Plaintiff graduated from Duke Ellington in June, 2005, and began attending the Art Institute of Philadelphia in the Fall. *Exhibit 4, meeting notes.*

On January 29, 2007, Plaintiff filed an administrative due process complaint notice seeking compensatory education because, according to Plaintiff, his March, 2005, IEP was inadequate. *See Exhibit 1, pp. 4, 7.* A hearing was held on May 1, 2007, before Hearing Officer Coles B. Ruff and a Hearing Officer's Determination ("HOD") issued May 14, 2007, dismissing Plaintiff's complaint. *See May 14, 2007 HOD, attached as Exhibit 5.* Hearing Officer Ruff concluded that Plaintiff did not sustain his burden of proof that the March, 2005, IEP was inappropriate because (1) that the March, 2005 IEP

notes stated that his teachers believed he made sufficient progress and was on track to graduate; and (2) Plaintiffs cited no requirement that a student's reading ability be at a certain grade level.  In addition, Hearing Officer Ruff noted that Plaintiff obtained a 2.1 grade point average during his first year at the Art Institute of Philadelphia, and that tutoring was available at the Art Institute to assist Plaintiff with his Basic Writing course, but Plaintiff did not use it.  *Id., p. 6.*

On May 25, 2007, Plaintiff filed a motion for reconsideration of the HOD, claiming that Hearing Officer Ruff had an affiliation with the Duke Ellington School. *Complaint, para. 19.*  Plaintiff's motion for reconsideration did not challenge the HOD on the merits.  On June 11, 2007, Hearing Officer Ruff granted Plaintiff's motion for reconsideration and a "de novo" hearing on the original complaint. *See Order, attached as Exhibit 6.*

A new hearing was scheduled for July 3, 2007 before Hearing Officer Ramona Justice-Pegues, and an HOD issued July 17, 2007.  The HOD vacated the June 11, 2007 order for a new hearing because (1) a motion for reconsideration permits a hearing officer to either affirm or reverse his own HOD, it does not allow him to order a new hearing; (2) a party seeking to disqualify a hearing officer must present his objections in writing five business days prior to the date of the hearing; and (3) Hearing Officer Ruff's May 14, 2007 HOD was a final decision and appealable to any State court of competent jurisdiction or in a district court of the United States.  Thus, the complaint was not properly before Hearing Officer Justice-Pegues. *See July 17, 2007 HOD, attached as Exhibit 7.*

Plaintiffs filed this action on October 10, 2007, seeking reversal of the July 17, 2007 Hearing Officer's Determination, and a remand of the matter for a de novo hearing.

## ARGUMENT

### I.    The Standards of Review Applicable in This Case

#### A.    The requirements for summary judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C.Cir. 1994).  Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To be genuine, the issue must be supported by sufficiently admissible evidence such that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation.  See id.; see also Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C.Cir. 1987).

In cases such as this, the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §1400 et seq. ("IDEIA"), dictates that "the court [ ] shall receive the records of the administrative proceedings; [ ] shall hear additional evidence at the request of a party; and [ ] basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(B).  When (as here) neither party has requested the court to hear additional evidence, the "motion for summary judgment is simply the procedural vehicle for asking the judge to decide the

case on the basis of the administrative record." <u>Heather S. v. Wisconsin</u>, 125 F.3d 1045, 1052 (7th Cir. 1997).

### B.   The criteria for review of administrative decisions under IDEIA

IDEIA provides for judicial review in state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing.  20 U.S.C. §1415(i)(2)(A).  In conducting such review, the "preponderance of the evidence" standard of 20 U.S.C. §1415(i)(2)(B)(iii) "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review."  <u>Board of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley</u>, 458 U.S. 176, 206 (1982).  Stated differently, the court should not "reverse the hearing officer's findings simply because [the court] disagree[s] with them." <u>Board of Educ. of Arlington Heights Sch. Dist. No. 25 v. Illinois State Board of Educ</u>., 2001 U.S.Dist.LEXIS 6994, *12 (N.D.Ill. March 19, 2001).

The party challenging the hearing officer's determination bears the burden of persuading the court that the hearing officer was incorrect.  <u>Angevine v. Smith</u>, 292 U.S.App.D.C. 346, 959 F.2d 292, 295 (1992); <u>Kerkam v. McKenzie</u>, 274 U.S.App.D.C. 139, 862 F.2d 884, 887 (1988); <u>Lyons v. Smith</u>, 829 F.Supp. 414, 417 (D.D.C. 1993). While the Court is authorized to make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education."  <u>Lyons v. Smith</u>, <u>supra</u>, 829 F.Supp. at 418. As recently expressed in <u>S.H. v. State-Operated School Dist. of the City of Newark</u>, 336 F.3d 260, 269-271 (3d Cir. 2003), a district court reviewing an HOD is "required to defer to the ALJ's factual findings unless it can point

to contrary non-testimonial extrinsic evidence on the record". This deference results from Congress' recognition of the "specialized knowledge and experience" required to make complicated educational choices. <u>Rowley</u>, <u>supra</u>, 458 U.S. at 207-08.

Accordingly, before this Court may reverse the hearing officer's decision at issue, Plaintiffs must show by a "preponderance of the evidence," giving the hearing officer's finding "due weight," that the hearing officer was wrong.

## II. __The July 17, 2007, HOD was legally sufficient, and must be upheld.__

### A. __Plaintiff did not prove that a conflict of interest affected Hearing Officer Ruff's objectivity; therefore, there was no duty to recuse.__

In Plaintiff's "Opposition to the Defendant's Motion to Dismiss and the Plaintiff's Motion for Summary Judgment" filed herein February 13, 2008 ("Motion"), he argues that the July, 2007, HOD is flawed because Hearing Officer Justice-Pegues failed to note that Hearing Officer Ruff "had a duty to recuse himself," and, in fact, "agreed that he had a duty to recuse himself." *Motion, pp. 9-10.* Plaintiff's position rests upon a misinterpretation of the law, and a distortion of the facts.

20 U.S.C.§1415(f)(3)(A)(i) provides that a hearing officer conducting a hearing pursuant to paragraph (1)(A) shall, at a minimum, not be a person having a personal or professional interest ***that conflicts with the person's objectivity in the hearing***. *See also* 5 DCMR §3001. What Plaintiff has glossed over here, and failed to prove to Hearing Officer Justice-Pegues, is that Hearing Officer Ruff's *alleged* professional interest in Duke Ellington *conflicted with his objectivity* to conduct the May 1, 2007 hearing impartially. As Hearing Officer Justice-Pegues stated.

> Assuming arguendo, the Hearing Officer had an affiliation with the school personnel, Petitioner failed to introduce sufficient evidence that the Hearing officer had a *personal or professional interest that conflicted with his objectivity*

12

*in the hearing,* requiring that he disqualify himself from the hearing, as required by IDEA.

*July 17, 2007 HOD, Exhibit 7, p. 4.*

In <u>United States v. Pollard</u>, 959 F.2d 1011 (D.C. Cir. 1992), the appellant had filed a motion for recusal because the chief judge hearing the case had personal knowledge of disputed evidentiary facts. The Court of Appeals upheld the judge's decision to deny the motion for recusal because "only personal knowledge *of disputed evidentiary facts* gained in an extrajudicial capacity is grounds for recusal." <u>Id.</u>, p. 1031.

In this action, Plaintiff has not even alleged the Hearing Officer Ruff had personal knowledge of any disputed evidentiary facts. Rather, Plaintiff merely assumed that a bias existed because Hearing Officer Ruff's children also attended Duke Ellington. Furthermore, Hearing Officer Ruff did not "agree" that he had a duty to recuse himself, as Plaintiff claims. The June 11, 2007, Order **does not** concede that there is a conflict of interest or that Hearing Officer Ruff was unable to render an impartial determination. Rather, the June 11, 2007, Order merely states that the motion for reconsideration is granted "to dispel any appearance of impropriety." *Exhibit 6.*

Since Plaintiff failed to prove that Hearing Officer Ruff's objectivity was compromised, the hearing officer he had no duty to recuse himself. Accordingly, the July 17, 2007 HOD must be upheld.

**B. <u>Hearing Officer Ruff did not have the authority to grant the relief requested in Plaintiff's motion for reconsideration.</u>**

Plaintiff's Motion fails to address one issue that factored into Hearing Officer Justice-Pegues' decision to dismiss Plaintiff's complaint: the finality of a Hearing Officer's Determination.

20 U.S.C.§1415(i)(1)(A) provides that a hearing officer's determination "*shall be final*, except that any party involved in such hearing may appeal such decision under the provisions of subsection (g) of this section and paragraph (2)."  *See also 34 C.F.R. Section 300.514(a).*

The Special Education Student Hearings and Appeals, Standard Operating Procedures ("SOP") permit an aggrieved party to file a motion for reconsideration to the Hearing Officer who issued the determination, prior to the aggrieved party filing a civil action "to any State court of competent jurisdiction or in a district court of the United States," as permitted by 20 U.S.C. 1415(i)(2)(A).  SOP §1005 provides:

> If a motion for reconsideration is granted, the Hearing Officer may reopen the record in the matter, amend the findings of fact and conclusions of law, correct errors or mistakes, or make new findings of fact, conclusions of law, and issue a new order.

Plaintiff's May 25, 2007 Motion for Reconsideration did not ask Hearing Officer Ruff to amend findings of fact, correct errors, or make new findings of fact and conclusions of law.  Indeed, Plaintiff's Motion for Reconsideration did not even suggest that the conclusions of the May 14, 2007 HOD were legally insufficient.  Rather, Plaintiff asked Hearing Officer Ruff to grant a "de novo hearing of his complaint," an objective that is clearly impermissible pursuant to the SOP.  *See Plaintiff's Motion for Reconsideration, attached as Exhibit 8.*

Hearing Officer Ruff exceeded his authority in granting Plaintiff a de novo hearing on his original complaint.  Accordingly, Plaintiff's complaint should not have been before Hearing Officer Justice-Pegues, and her decision to dismiss the complaint should be upheld.

### III.  Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss Complaint

Plaintiff's October 10, 2007, Complaint seeks a reversal of the July 17, 2007, HOD and a remand of the matter for a de novo hearing.  On January 29, 2008, Defendant filed a motion to dismiss the complaint as moot because, although Defendant believes the July 17, 2007, HOD is legally sufficient, Defendant agreed to Plaintiff receiving a new hearing on the original due process complaint.

Plaintiff opposed Defendant's motion to dismiss, stating that "Plaintiff's counsel seeking reimbursement for minimal reasonable attorneys (sic) fees and cost (sic) associated with litigating this matter hardly serves as a reason to dismiss this claim."

Defendant did not argue that Plaintiff's Complaint should be dismissed because his counsel is seeking attorney's fees and costs, and is puzzled by Plaintiff's insertion of the subject of attorney's fees and cost in his opposition.  In any event, Plaintiff's Complaint must be dismissed for the reasons argued in Defendant's cross motion for summary judgment.

### CONCLUSION

Plaintiff did not show that Hearing Officer Ruff's affiliation with Duke Ellington compromised his impartiality.  Therefore, the hearing officer was not required to recuse himself.  In addition, Hearing Officer Ruff did not have the authority to grant a de novo hearing.  Accordingly, the July 17, 2007, HOD must be upheld, Defendant's cross motion for summary judgment must be granted, and Defendant's complaint must be dismissed with prejudice.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the
  District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Edward P. Taptich*
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

/s/ *Veronica A. Porter*
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**February 25, 2008**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                    :
**DARIUS HILL,**                    :
                                    :
      **PLAINTIFF**         :
                                    :        **Civ. Action No. 07-1894(JR)**
      **v.**               :
                                    :
**DISTRICT OF COLUMBIA,**           :
                                    :
      **DEFENDANT.**       :
_____


**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S</u>**
**<u>STATEMENT OF UNDISPUTED FACTS</u>**

Defendant has reviewed Plaintiff's facts and finds them to be accurate but, with the exception of paragraph 11, immaterial to the issue before this Court. The only issue before the Court is the legal sufficiency of the July 17, 2007, HOD. Defendant's Memorandum shows that the July 17, 2007, HOD is legally sufficient and must be upheld.


                Respectfully submitted,

                PETER J. NICKLES
                Interim Attorney General for the
                  District of Columbia

                GEORGE C. VALENTINE
                Deputy Attorney General
                Civil Litigation Division

                _/s/ *Edward P. Taptich*_____
                EDWARD P. TAPTICH (012914)
                Section Chief
                Equity Section Two

*/s/ Veronica A. Porter*_____
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**February 25, 2008**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                :

**DARIUS HILL,**                :
                                :

        **PLAINTIFF**       :
                                :      **Civ. Action No. 07-1894(JR)**

           **v.**          :
                                :

**DISTRICT OF COLUMBIA,**  :
                                :

       **DEFENDANT.**     :
_____

### ORDER

     On consideration of Defendant's cross motion for summary judgment, opposition to Plaintiffs' motion for summary judgment, and reply to Plaintiff's opposition to Defendant's motion to dismiss complaint, the response thereto and the record in this proceeding, it is, this _____ day of _____, 2008,

     **ORDERED**, That Plaintiffs' motion for summary judgment is DENIED, and the Defendants' cross motion for summary judgment is GRANTED; it is

     **FURTHER ORDERED**, That the July 17, 2007, hearing officer's decision is affirmed; it is

     **FURTHER ORDERED**, That Defendant's motion to dismiss complaint is GRANTED; and it is

     **FURTHER ORDERED**, That Plaintiffs' complaint herein is dismissed with prejudice.

                               _____
                                  U.S. DISTRICT COURT JUDGE

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



# ADMINISTRATIVE DUE PROCESS
# COMPLAINT NOTICE

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child.  <u>A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).</u>

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- <u>Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice.</u>  Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting **(called a "Resolution Session")** with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting.  You will be contacted by a representative of the Local Educational Agency to schedule the meeting.  **The Student Hearing Office does NOT schedule resolution meetings.**

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

## A.    INFORMATION ABOUT THE STUDENT:

Name of the Student:  __Darius Hill__   Date of Birth: 04/30/86

Address: 2244 Savannah Terrace #23 SE, Washington, D.C.  20020

Present School of Attendance: Duke Ellington  School of the Arts

Parent/Guardian of the Student:  Ms. Cornelia Hill

**B.**    **Legal Representative/Attorney (if applicable):**
Name:   Christie Fontaine-Covington, Esq.

Address: 1220 L Street, NW, Suite 700, Washington, DC 20005

Phone: (w) _202-742-2000_  (Fax) _202-742-2097__  (e-mail) _____

Will attorney / legal representative attend the resolution session?    **X** Yes        ☐ No

**C.**    **Complaint Made Against (check all that apply):**

**X** DCPS school (name of the school if different from page one)
Charter school (name of the charter school if different from page one) _

_____
☐ Non-public      school      or      residential      treatment      facility      (name)
_____
☐ Parent

**D.**    **Resolution Session Meeting Between Parent and LEA:**

**X** I wish to waive the Resolution Session Meeting.

**E.**    **Mediation Process:**

**I am requesting an administrative due process hearing only at this time.**

 **F.**    **Facts and Reasons for the Complaint:**

  **I.**    **Nature of the Problem.**

1. Darius Hill (hereinafter "Darius", D.H. or "Student" ) is a college age student who attended Duke Ellington School of the Arts.  He is classified as learning disabled.

2. His most recent IEP dated March 15/2005 indicated that the student was to  receive 3.5 hours per week of specialized instruction. He was also to have extended time on standardized testing.

3. He previously attend Henley Elementary School where the parent requested he be retained in the 5th grade and Garfield Elementary , Hart Junior High School  and Blow Pierce Charter School where he was retained in the 7th grade.

4. The student has exhibited reading problems from third grade until the present time. The  student's March 26, 2003 Social History stated that "Darius has been referred

for special education evaluation due to the severity of his reading deficits which are impeding his academic progress."

5. Duke Ellington worked quickly in evaluating and developing an IEP for the student once his reading problems became apparent. The team although aware of the severity of his severe reading/language arts deficits the IEP developed prescribed only 3.5 hours of specialized instruction per week, which is less than is the 50 minutes per day allotted for regular high school periods. Students usually receive at least 5 hours a week to cover the entire class period for the area affected by their disability.

6. There are only two short term objectives/goals listed on the 2005 IEP and the goals are not really compatible with the area of deficit noted on the evaluations. The deficits listed are: decoding and phonetic skills that hamper the students ability to recognize and pronounce unfamiliar words. The goals listed are: 1. choose a research topic and then research it and complete an extensive research paper. 2. read a selected material, analyze it, recall details and summarize the selection.

7. The student "graduated" in June 2005 with a 2.611 although his reading/decoding skill were still seriously deficit.

8. A letter written by the Special Education Chair indicates that the student "has a learning disability that primarily impacts his written and language abilities". She also noted that "he has some problems decoding words and his somewhat weak phonetic skills impact his reading speed and accuracy.

9. The student attended the Art Institute of Philadelphia for one year but was terminated in Spring 2006 for academic deficiency. His two deficient grades were Basic Writing and Introduction to Manufacturing. Both classes require basic skills in the areas of Darius' disability; reading/language arts.

10. The instructions for Academic Appeal Process required the student to write a letter to the Appeal Panel. The instructions stated that correct grammar, spelling and punctuation were required. Although the student wrote the academic appeal letter, it was an exercise in futility because the Appeal Panel was going to consider negatively all mistakes in grammar, spelling and punctuation the very areas in which the student had a serious deficit. The student was not accepted back into the Art Institute despite having a 3.0 average in his other 3 classes.

11. Darius has been described as very talented in visual arts, his choice of career and program of study. He can not pursue a career in which he possesses superior technical skill because he can not master basic reading and writing skills.

12. The very same basic skills: reading/language that should have been addressed by DCPS years ago are the same ones that will prevent the student from training and working in a field for which he is imminently qualified.

3

13. Ms. Cornelia Hill, the parent requested that her son be tested on numerous occasions before he was finally tested at Duke Ellington.

14. The student is attempting to admission into another college to continue his studies however, he is fearful that his lack of basic reading/language skills will prevent him from being successful in his application to the college. He is extremely concerned that he will not be able to pass the placement test required to even be considered for a college program.

15. The student is entitled to compensatory education for the time period that he should have received special education services and for the time period that he received insufficient services as determined/prescribed by his inadequate IEP.

## II. Specific Allegations

1. **DCPS' failure to develop an adequate IEP to address the student's disability is a violation of the IDEIA.**

   20 U.S.C. 1414 (3) (A) states " In developing each child's IEP, the IEP Team subject to paragraph (C) shall consider (i) the strengths of the child; (ii)the concerns of parents for enhancing the education of their child;(iii) the results of the initial evaluation or most recent evaluation of the child; and (iv) the academic, developmental, and functional needs of the child. Darius' IEP did not adequately address his academic needs in that he had severe reading/language arts concerns that needed to be addressed but he was only given 3.5 hours of specialized instruction which is less than 50 minutes per day. The IEP team was aware that the student's reading/language arts deficit was a problem of long duration and that extensive remedial assistance was need but they still did not tailor his IEP to reflect the extent, frequency and intensity of the services Darius would require.

   Darius received a di minimus educational benefit in that some standardized test scores show that a decrease rather than an increase. DCPS was aware of how many hours would be required to even begin to provide what the student needed but yet DCPS choose each year not to increase his hours of service. The student should not be penalized because the Team drafted an IEP that did not address his levels of specific need. Although the student participated in the March 2005 IEP as well as other IEPs he had not yet attained the age of majority and could not as a minor dictate what should be on his IEP. Darius is not over eighteen years and he now realizes that he did not receive the educational benefit he should have received from DCPS, therefore, he is bringing this complaint and requesting compensatory education for the services that he missed when he either did not have an IEP or had an inadequate IEP.

   In <u>Michael C. v The Wissahickon School District</u>, 44IDELR 153(October 21, 2005) the Court holding that an 18 year old was entitled to have the State

administrative consider whether he received an appropriate education for years 1995-2004 and quoting <u>M.C. v. Central Regional School Dist.</u>, 81 F.3d 389 (3d Cir. 1996) concludes that "If a disabled child does not receive an appropriate IEP, he is entitled to compensatory education." Darius did not have an appropriate IEP therefore, it appears that he is entitled to compensatory. DCPS will argue that his claim is barred by the statute of limitations however, <u>Ridgewood Board of Educ. v. N.E.</u>, 172 F. 3d 238, 250 (3d Cir. 1999) ruled that " a disabled student's right to compensatory education accrues when the school knows or should know that the student is receiving an inappropriate education." DCPS knew or should have known as early as the seventh grade that the student was receiving an inappropriate education when he was retained. The parent had requested help for her son as early as the third grade, so the school was put on notice as early as that time but failed to act. Even after the student was retained it took another 3 years for DCPS to finally test then student and create an IEP.  When DCPS finally created an IEP it failed to create an appropriate IEP that reflected the student's academic needs. Now the student is left with a "high school diploma" that is in essence a fraud in that he can barely read and write above the sixth grade level.

Darius is entitled to compensatory education because he now faces a future in which his choices are limited through no fault of his own. All of the school administrators, teachers and staff stated that the student worked very hard in the school special education services that he was provided. The student trusted and relied on the expertise and experience of others who had a duty to act in his best expertise to provide him with the educational benefit he so rightly deserved.  The <u>Michael C.</u> court stated that " because compensatory education belongs to the child and 'should not depend on the vigilance of the parents,' the student's right to compensatory education is not restricted by an equitable limitation period."

Darius is entitled to compensatory education and he should not be barred by what the school his parents or anyone else did regarding his education before he was able to make decisions for himself. The right to compensatory education is hid because he is the one person who has to live with the decisions made by others when he was unable to do so. He now wants to exercise his right to obtain the educational services that he was deprived or inadequately provided.

### III. Issues presented.

1.    Whether or not DCPS the student is due compensatory education services after DCPS repeatedly failed to identify him as a child with a disability and then subsequently failed to draft an appropriate IEP that addressed his academic needs?

### IV. Relief Sought.

**WHEREFORE**, the student, by and through counsel, hereby requests the following relief:

1. A finding that DCPS violated the IDEIA when it failed to develop an inappropriate and inadequate IEP for the student.

2. DCPS, within ten (10) calendar days of the issuance of the HOD to convene the student's MDT/IEP to discuss and determine the amount, type and mode of delivery of his compensatory education.

3. DCPS shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation (5 DCMR 3000.3), and other related services as are defined at 34 C.F.R. 300.7; <u>Assistance to States for the Education of Children with Disabilities</u>, 70 Fed. Reg. 35782, 35836 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300), designed to meet this student's unique needs and preparation for employment and independent living;

4. Send all notices to counsel for the student with copies of such to the student and in the student's native language;

5. That DCPS within ten (10) calendar days of the filing of this complaint, pursuant to 20 U.S.C. 1415(b) (7), provide the parents' representative, Christie Fontaine-Covington, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following: 1) an explanation of why DCPS proposed or refused to take the action raised in the complaint; ii) a description of other options that the IEP team considered and the reasons why those options were rejected, iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and iv) description of the other factors that are relevant to the agency's proposed or refused action;

6. That DCPS, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the parent in this administrative due process complaint will be deemed true and accurate and act as a waiver, on the part of DCPS, for their desire to have a Resolution Session Meeting, and the parent's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA, furthermore, DCPS' failure to provide a response or prior written notice as required will result in the parent's being awarded a default judgment;

7. That DCPS, within fifteen (15) calendar days of receiving the student's Complaint, pursuant to 20 U.S.C. 1415(c) (2), respond to the student's request alleging any insufficiency of notice;

8. That DCPS' failure to comply with the Individuals with Disabilities Education

Improvement Act of 2004, and allege any insufficiency of the student's administrative due process complaint will constitute waiver on the part of DCPS to make such argument at any later date and time;

9. That DCPS, pursuant to 20 U.S.C. 1415(f)(1)(B) within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the student's representative, in writing, via facsimile, at 202-742-2097 or 202-742-2098, to schedule and convene a Resolution Session Meeting;

10. That DCPS convene the Resolution Session Meeting, with the student, the student's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint. That the relevant members of the MDT/IEP Team that shall be present at the Resolution Session Meeting for the student;

11. That DCPS' failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to 20 U.S.C. (f) (1) (B) constitute joint waiver between DCPS and the student to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receives a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the student's counsel; and

12. DCPS ordered or agree to pay student's reasonable attorney's fees and costs.

## G.    **Accommodations and Assistance Needed:**

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

## H.    **Signature:**

_Christen Jon Luie Cruz_                                    _1/29/07_
Legal Representative / Advocate (if applicable)              Date

**Mail, fax or deliver this complaint notice to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC 20002**
**Fax number: 202/442-5556**

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

DCPS - IEP Page 1 of 4

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last **Hill**      First **Darius**      MI

Student ID **7876743**   Soc. Sec. No. **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**   Age: **16.11**   Grade **10**

Gender ☒ M ☐ F   Date of Birth **4/30/86**   Ethnic Group **Black**

Address **2244 Savannah Terr., SE Apt. #23**
House No.     Street Name     Quadrant     Apartment #
**Washington, DC 20020**
City     State     Zip Code

☐ Non-attending

Attending School **Duke Ellington School**   Home School **Ballou SHS**

☐ Elem. ☐ Mid/JHS ☒ SHS ☐ CWS of the Arts

Parent **Ms. Cornelia Hill**

Address of (if different from student):   ☐ Parent ☐ Guardian ☐ Surrogate

House No.     Street Name     Quad.     Apt. No.     City     State     Zip Code
Telephone: Home **678-0325**     Work

### II. CURRENT INFORMATION

Date of IEP Meeting: **3/27/03**
Date of Last IEP Meeting: **—**
Date of Most Recent Eligibility Decision: **3/27/03**

Purpose of IEP Conference:
☒ Initial IEP     ☐ Review of IEP
☐ Requested Eval.     ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: **III.**

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | | TRANSPORTATION |
|---|---|---|
| ESY | | ☒ TRANSITION |

### III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | none | Oral |
| Parent | English | English | English | none | Rdg./Written |
| Home | English | English | | none | Instrument: |
| | | | | | Date: |

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SpEd | Total | FREQUENCY Hr./Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos |
|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 35 | 3.5 | | 1hr | wk. | special ed teacher | 3/28/03 | 10 mos |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| **TOTAL** | **35** | **3.5** | | Hours Per Week | | | | |

### V. Disability(ies)

**Learning Disabled**

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☒ 0-20%   ☐ 21-60%   ☐ 61-100%

Percent of time NOT in a Regular Education Setting **1 %**

### VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

K. Winn-Ritzaber  *Kitzy* _____
Cornelia Hill   *Cornelia Hill*
Toni Atkinson Williams  *Toni Atkinson-Williams*
Darius Hill   *Darius Hill*
Lynn Zuckrow  _____

Sonja J. Oakcrum  *SJ Oakcrum*
Mel S. Mehlman, SES  _____
Alice Chandler  _____
John F. Payne   *John Payne (Dean)*

*I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature  *Cornelia Hill*      Date **3-27-03**

| Student Name | Darius Hill | Managing School | Ellington | DCPS - IEP Page 2 of 4 |
| Student ID Number | 7826743 | DOB 4/30/86 Attending School | Ellington | |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Additional Comments: 35    GE

**Academic Areas: (Evaluator)** Toni Atkinson-Williams

Score(s) When Available

**Math Strengths:**

Darius was able to solve algebraic equations, add negative integers and calculate pi

Math Cal. 89    8.3
Math Rea. 86    6.8

**Impact of disability on educational performance in general education curriculum:**

Darius' difficulty in using an appropriate strategy hampers his math reasoning skills

See goal page: _____

Date: _____

**Reading Strengths:**

Rdg. Com 69    4.0
Rdg. Basic 75    5.9
Written Ex. 77    4-8

**Impact of disability on educational performance in general education curriculum:**

Darius' problems with decoding and phonetic skills hampers his ability to recognize and pronounce unfamiliar words

See goal page: 1,2

Date: 2/22/03

**Communication (Speech & Language) (Evaluator)**

Score(s) When Available

**Strengths:**

Exp.Lang. _____
Rec- Lang. _____
Artic _____
Voice _____

**Impact of disability on educational performance in general education curriculum:**

Fluency _____
Exp. Voc. _____
Rec. Voc. _____
See goal page: _____
Date: _____

**Motor/Health (Evaluator)** _____

Score(s) /Results When Available

**Strengths:**

_____
_____
_____

**Impact of disability on educational performance in general education curriculum:**

See goal page: _____

Date: _____

**Social Emotional Behavioral Areas: (Evaluator)**

Score(s) When Available

**Strengths:**

_____
_____
_____

**Impact of disability on educational performance in general education curriculum:**

See goal page: _____

Date: _____

**Cognitive/Adaptive Behavior: (Evaluator)**

Score(s) When Available

**Strengths:**

_____
_____
_____

**Impact of disability on educational performance in general education curriculum:**

See goal page: _____

Date: _____

**Prevocational Skills: (Evaluator)**

Score(s) When Available

**Strengths:**

_____
_____
_____

**Impact of disability on educational performance in general education curriculum:**

See goal page: _____

Date: _____

| Student Name | Darius Hill | Managing School | Ellington | DCPS - IEP |
| Student ID Number | 2876743 | DOB 4/30/86 | Attending School | Ellington | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments:    Goal Number: 1

Area addressed by goal: Specialized Instruction - Academics - Reading

ANNUAL GOAL: (including mastery criteria.)

Darius will demonstrate six months to one year's growth in the area of reading and reading comprehension with 75% accuracy.

Provider(s): Resource room teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | | Date Mastered | Evaluation Schedule |
|---|---|---|---|
| 1) Given a selected novel, read it, analyze it and critique it stating likes and dislikes. | | | monthly |
| 2) Given a reading selection, summarize it in both written and oral form. | | | monthly |
| 3) Interpret word meanings from context clues to define words. | | | monthly |
| 4) Given increasingly difficult multi-step directions, follow them. | | | monthly |
| 5) Demonstrate pre-reading strategies to improve reading comprehension such as scanning headlines and headings, looking at pictures and graphs and previewing chapter summaries and questions. | | | monthly |
| | | | |

**EVALUATION PROCEDURE(S)**

Portfolio    Log    Chart    Test    Documented Observation    Report    Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

| Student Name | Darwin Hill | Managing School | Ellingt | DCPS - IEP |
| Student ID Number | 7876743 | DOB 4/30/86 | Attending School | Ellingt | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**   Additional Comments:                    Goal Number: [2]

Area addressed by goal: _Academics-Written Language_

ANNUAL GOAL: (including mastery criteria.)

Darwin will improve written language skills by one grade level by mastering the following objectives with 75% accuracy.

Provider(s): _Resource room teacher_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1.) Demonstrate appropriate usage of English grammar and usage in written work. | | weekly |
| 2.) Punctuate and capitalize written work appropriately. | | weekly |
| 3.) Develop an effective paragraph using a topic sentence supporting details and a concluding sentence, eventually leading to a five paragraph essay. | | weekly |
| 4.) Increase vocabulary by 5 to 10 words per week and correctly spell and describe the meaning of the words. | | weekly |
| 5.) Proofread written work, identify errors made and self-correct. | | daily |
| | | |

**EVALUATION PROCEDURE(S)**

(Portfolio)    Log    Chart    (Test)    Documented Observation    Report    Other _____

Student Name  Darius Hill  School  Ellington

Student ID Number  7876743  DOB  4- 30 –86  Attending School  Ellington

DCPS - IEP
Page 3 or 4

L SPECIALIZED SERVICES    Additional Comments: ☐

Area addressed by goal: _____ Transition

Goal Number: 3

NUAL GOAL: (Including mastery criteria.)

arius will complete the following objectives as they relate to transition goals with 80% accuracy.

ider 's  Transition, academic / art teachers, counselors, and parent

sider audience, behavior, degree and evaluation

| SHORT-TERM OBJECTIVES (Include mastery criteria or benchmarks) | | Date Mastered | Evaluation Schedule |
|---|---|---|---|
| udent will produce art work for his art portfolio. | | | Quarterly |
| udent will complete a minimum of 25 hours of the required 100 community service hours. | | | Annually |
| udent will keep a budget of his monthly spending needs, i.e. transportation, lunch, etc. | | | Quarterly |
| arius will identify five work habits, which are needed to be successful at school and at work. | | | Quarterly |
| arius will identify five jobs associated with the fashion industry. | | | Quarterly |
| | | | |
| | | | |
| | | | |

| Student Name _Darius Hill_ | Managing School _Ellington_ | DCPS - TRANSITION SERVICES PLAN |
|---|---|---|
| Student ID Number _7876743_    DOB _4-30-86_ | Attending School _Ellington_ | PAGE 1 OF 2 |

Date Developed: _3-27-03_

## DCPS TRANSITION SERVICES PLAN

**Note:** The MDT determines if the IEP must include a statement of transition service needs which focuses on the Courses of study if the student will turn 14 during the implementation of the IEP. Furthermore, the MDT must include a detailed transition plan for a student who will turn 16 during the implementation of the IEP.

**I.    Record student's post-secondary goals and interests.**

Employment: _Darius wants to be a fashion designer for men and women_

Community Participation: _He would give them money to clean houses and the streets._

Post-Secondary Education and Training: _attend college, earn a degree_

Independent Living: _Plans to live in his own apt. or house._

**II.   Courses of study leading to student's post-high school goals.**

| Grade or School Year | Courses of Study |
|---|---|
| 10th | _English, math, visual art classes_ |
| | |
| | |
| | |

**III.   Transition Services Needed.**

Evaluate the student's present level of performance in the following areas: Academic, Career Courses, Community-based Training, Supported or Competitive Employment, Communication, Independent Living Skills, Community Travel, Transportation, Employability Skills, Social Skills, Community Resources, Educational, Financial, Career Training, Community-Based Instruction, Skill/Trade Training, Vocational, or Social Relationships.

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| Employment<br><br>If service is not needed, provide explanation. | _Maintaining an Art portfolio_ | _DCPS_ |
| Community Participation<br><br>If service is not needed, provide explanation. | _Earning a minimum of 25 community service hours._ | _DCPS_ |
| Post - Secondary Education and Training<br><br>If service is not needed, provide explanation. | _Job shadowing_ | _DCPS_ |
| Independent and Adult Living<br><br>If service is not needed, provide explanation. | _Budget preparation_ | _DCPS_ |

*Darius Hill*

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| **Daily Living Skills** If service is not needed, provide explanation. | *Self-sufficient* | *DCPS* |
| **Functional Vocational Evaluation** If service is not needed, provide explanation. | *Auditioned & accepted into the visual arts department* | *DCPS* |
| **Other** If service is not needed, provide explanation. | *None* | *DCPS* |

IV.

| Projected Exit Category *(check one)* | High School Diploma Status | Projected Exit Date *(M/D/Y)* |
|---|---|---|
| X DC High School Diploma | # Credits Earned toward Graduation | *June, 2005* |
| High School Certificate at age 21 | # Service Learning Hours Completed | |
| High School Certificate **prior** to age 21 | # Community Service Hours Completed | |

| State Test Requirements | Area | Date Taken/Score Received |
|---|---|---|
| *SAT 9* | *Reading / Math* | |
| | | |
| | | |

V.  *Identify any other agencies likely to be responsible for providing or paying for specific transition services.*

**Examples of Agency Linkages Needed for Transition**
- Rehabilitation Services Administration (RSA)
- Mental Retardation and Developmental Disabilities Administration (MRDDA)
- Commission on Mental Health Services (CMHS)
- UDC or other higher education institutions

| Agency | Agency Representative | Method of Contact | Date |
|---|---|---|---|
| *RSA* | *Cheryl Thorpe* | *phone* | |
| | | | |
| | | | |

| Student Name | Darius Hill | Managing School | Ellington | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 2876 743 | DOB 4/30/86 | Attending School | Elling | Page 4 of 4 |

**Additional Comments:**

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
## SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education?     Yes     **No**

Explanation for removal out of regular education classroom.

Darius requires a small structural environment to accommodate disability.

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SpEd | Total | FREQUENCY Hr./ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| Use of computer / calculator | 28.5 | 3.5 | 32 | hr. | w | Classroom teacher | 3/28/03 |
| Spell checker | 28.5 | 3.5 | 32 | hr. | w | Classroom teacher | 3/28/03 |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations  for **testing:**          None needed

Timing/Scheduling: _Time extensions_

Setting:

Presentation:

Response:

Equipment: _Use of computer / calculator_

## XI. STATE AND DISTRICT ASSESSMENTS:

Level I    Tested with non-disabled peers under standard conditions without accommodations.

**Level III** (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

Level V  Portfolio: _____

Level II    (Describe accommodations for level II) Tested under standard conditions with special accommodations.

Level IV   (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

| | | **Modifications:** |
|---|---|---|
| **Reading** | Physical/Sensory | Transition | **Language Arts/English** |
| Mathematics | Social Emotional | Vocational | Social Sciences |
| **Written Expression** | Physical Development | Independent Living | Biological & Physical Sciences |
| Other: | | Speech/Language | Fine Arts |
| None | Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above. | | |

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| In general education setting | reject | school failure |
| Combination general and resource classroom | accept | Time away from non-disabled peers |

Modification(s)/Accommodation(s) to address the harmful effects:

Provision of parallel instruction

Location for Services   Ellington

District of Columbia Public Schools       07-02-2001       Division of Special Education       Appendix - A       IEP Page 4 of 4

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**SPECIAL EDUCATION**

**MULTIDISCIPLINARY TEAM (MDT)**

**PRIOR NOTICE**

Check Purpose:

✓ Initial Evaluation

Initial Placement

Reevaluation

    Change in Category Exit

    Related Service Add

    Related Service

    Change in Placement

    Other _____

Date _March 27, 2003_

Student _Darius Hill_     DOB _4/30/86_

School _Duke Ellington School of the Arts_

Current Disability Category _Learning Disabled_

Setting _Combination general ed and resource classroom_

Dear _Ms. Cornelia Hill_

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:

✓ Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.

    Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.

    Other _____

A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)

    Your child is not eligible for special education service(s).

✓ Your child is eligible or continues to be eligible to receive special education services as a student with _a learning disability_

    Your child will begin receiving _____ as a related service(s).

    Your child will no longer receive _____ as a related service(s).

    Your child's category of disability is being changed from _____ to _____

    Your child's alternative placement on continuum (next setting) is being changed,

    from _____ to _____

    Your child is no longer eligible and will be exited from the special education program.

    Other: _____

**Description and Explanation of agency action proposed or refused.**

The MDT met to review all of the documentation and considered all of the following for the student: In general classroom education and combination general education and resource classroom. The setting accepted by the team was a combination general education and resource classroom. The location discussed by the team were the neighborhood school and Ellington. The location accepted by the team is Ellington.

**Description of Other Options Considered and reasons for rejection of each option**

Based on the documentation reviewed by the team, at the MDT meeting, it was determined that the student could not be educated in a general education classroom setting. Documentation demonstrates that the student requires resource room assistance in order to access the general education curriculum.

Other relevant factors to the decision-

MDT Members:    (Principal or Designee)    (General Education Teacher)    (Psychologist)

    (Parent)    (Special Education Teacher)    (Other) _guidance counselor_

    (Student)    Speech and Language

    (Social Worker)    (LEA & Interpreter (*may be one))

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or have questions regarding the Procedural Safeguards
please contact _Mitzi Yates_     at _282-0123_     (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

MDT Prior Written Notice to the Parent
07-02-2001

1

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT REFERRAL DATE: _____

MEETING DATE: 3/22/03

STUDENT: Darius Hill

SCHOOL: Ellington

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Katy Winn-Ritzabey | Katy W-Ritz | Spec Ed Teacher |
| Jill S. Mehl | Jills mehl | SES |
| Cornelia Hill | Cornelia Hill | Mother |
| ALICE CHANDLER | Alice Chandler | Teacher |
| Sonya J. Oakcrum | S. Oakcrum | Guidance Counselor |
| Lynn Zicherman | | Intern |
| Darius Hill | Darius Hill | Student |
| John F. Payne | John Payne | Dean |

Purpose of meeting - Review tests & determine eligibility. Social History was completed by Lynn Breece. Tom Atkinson Williams presented the results of the 2-27-03 Psycho educational evaluation. Academic concerns involve reading and writing. Darius has never been in Special education, Darius denies problems in school prior to Ellington however, parent reported that he has struggled in school.

Cognitive functioning, as assessed on the WISC III, fell within the low average range. (VIQ 85 PIQ 87 FSIQ 85) there was no significant discrepancy between the Verbal and Performance scales. Subtests ranged from 6-9 lowest scaled scores were obtained on the Arithmetic & Vocabulary Subtests. Highest scaled scores were obtained on object assembly, comprehension and information.

Academic achievement as assessed on the WIAT yielded the following scaled scores and grade equivalents.
Word Reading SS 75 5-9 GE, Reading Comprehension SS 69 4.0 GE

THE PARENT ☒ IS PRESENT ☐ IS NOT PRESENT AT THE MEETING

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT _____ Darius

☐ CONTINUES TO BE ELIGIBLE FOR SPECIAL EDUCATION

☐ IS TO BE EXITED FROM SPECIAL EDUCATION

☑ meets the eligibility criteria for eligibility as a Student with Specific Learning Disabilities

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP)
MEETING NOTES

STUDENT _Darius Hill_        SCHOOL _Ellington_        DATE: _3/29/05_

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Katy Winn-Ritzenberg | Katy W-R | Spec Ed Teacher |
| Mel S. Mehl | Mel S Mehl | SES |
| Sonja J. Oakcrum | SJ Oakcrum | Counselor |
| Lynn Zuckerms | | Teacher |
| Darius Hill | Darius Hill | Student |
| ALICE CHANDLER | Alice Chandler | Teacher |
| Toni Atkinson-Williams | Toni Atkinson-Williams | School Psy |
| Cornelia Hill | Cornelia Hill | Mother |
| John F. Payne | John F. Payne | Dean of Students |

Purpose of Meeting: To develop A specialized instructional
Program For Darius Hill to address assessed weaknesses in
Reading and Written Communication.
    Accommodations: use of word processor, computer, grammar & spell checker,
extra time to complete assignments & tests, additional time
to process directions to complete reading assignments. plan
& organize responses.    SAT 9    Level   III   was recommended.
Darius will receive 3½ hours of specialized instruction.
in a combination special education / general education
setting w/ Placement to continue at Ellington
School for the Arts. (Neighborhood school is Anacostia)
    Transition services will be provided by Ms Chandler.
Darius wants to be a fashion designer. He plans to
receive a diploma by 05.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    IEP MEETING NOTES

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

DCPS - IEP  Page 1 of 4

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last HILL    First DARIUS R    MI

Student ID 7876743    Soc. Sec. No. 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    Age: 17    Grade 11

Gender ☒ M  ☐ F    Date of Birth 04/30/1986    Ethnic Group B

Address 2244 Savannah Terr.    SE    #23

House No.    Street Name    Quadrant    Apartment #
Washington    DC    20020
City    State    Zip Code

☐ Non-attending

Attending School Ellington School of the Arts    Home School Ballou

☐ Elem. ☐ Mid/JHS ☒ SHS ☐ CWS /

Parent  Ms. Cornelia Hill

Address of (if different from student):    ☒ Parent  ☐ Guardian  ☐ Surrogate

House No.    Street Name    Quad    Apt. No.    City    State    Zip Code
Telephone: Home 678-0325    Work

## II. CURRENT INFORMATION

Date of IEP Meeting:    03/16/2004
Date of Last IEP Meeting:    03/27/2003
Date of Most Recent Eligibility Decision:    03/27/2003

Purpose of IEP Conference:
☐ Initial IEP    ☒ Review of IEP
☐ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:
Level III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | | TRANSPORTATION |
|---|---|---|
| ESY | ☒ | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | | Oral |
| Parent | English | English | English | | Rdg./ Written |
| Home | English | English | English | | Instrument: |
| | | | | | Date: |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION | |
|---|---|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr./ Min | D/W/M. | | | # | wks./mos |
| Specialized Instruction | 0.00 | 3.50 | 3.50 | Hrs | Week | Resource Room Teacher | 03/16/2004 | 10 | Months |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| TOTAL | 0.00 | 3.50 | 3.50 | Hours Per Week | | | | | |

## V. Disability(ies)  Learning Disabled

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☒ 0-20%  ☐ 21-60%  ☐ 61-100%

Percent of time NOT in a General Education Setting    10%

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Cornelia Hill
  Parent

Katy Winn-Ritzenberg
  Special Ed Teacher

Alice Chandler
  General Ed Teacher

Sonja Oakcrum
  LEA Representative

John Payne
  Principal or Designee

Darius Hill
Student

☑ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature    Date 3-16-04

| Student Name | DARIUS R | HILL | Managing School | Ellington School of the Arts | DCPS - TRANSITION SERVICES PLAN PAGE 1 OF 2 |
|---|---|---|---|---|---|
| Student ID Number | 7876743 | DOB 04/30/1986 | Attending School | Ellington School of the Arts | |

Date Developed:    03/16/2004

## DCPS TRANSITION SERVICES PLAN

Note:    The MDT determines if the IEP must include a statement of transition service needs which focuses on the Courses of study if the student will turn 14 during the implementation of tile IEP. Furthermore, the MDT must include a detailed transition plan for a student who will turn 16 during the implementation of the IEP.

**I.    *Record student's post-secondary goals and interests.***

Employment:    Wants to own fashion design/cloth business.

Community Participation:    Help younger kids w/ computers; help teachers

Post-Secondary Education and Training:    Wants to attend college; earn a degree

Independent Living:    Wants to live in own apartment

**II.    *Courses of study leading to student's post-high school goals.***

| Grade or School Year | Courses of Study |
|---|---|
| 11th Grade | US History, Chemistry, English II, Printmaking |
| 11th Grade | Geometry, Spanish II, Drawing II, Visual Aesthetic |
| | |
| | |
| | |

**III.    *Transition Services Needed.***
*Evaluate the student's present level of performance in the following areas: Academic, Career Courses, Community-based Training, Supported or Competitive Employment, Communication, Independent Living Skills, Community Travel, Transportation, Employability Skills, Social Skills, Community Resources, Educational, Financial, Career Training, Community-Based Instruction, Skill/Trade Training, Vocational, or Social Relationships.*

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| **Employment**<br><br>If service is not needed, provide explanation. | To take classes which address his interest in fashion design and cloth making. | DCPS |
| **Community Participation**<br><br>If service is not needed, provide explanation. | Students is to complete the required 100 community service hours. | DCPS |
| **Post - Secondary Education and Training**<br>If service is not needed, provide explanation. | Student will meet with school counselor and Rehabilitation Services Administration counselor. | DCPS |
| **Independent and Adult Living**<br><br>If service is not needed, provide explanation. | Disability does not require this service. | DCPS |

03/16/2004

| Student Name | DARIUS R   HILL | | Managing School | Ellington School of the Arts | | DCPS - IEP |
|---|---|---|---|---|---|---|
| Student ID Number | 7876743 | DOB  04/30/1986 | Attending School | Ellington School of the Arts | | Page 4 of 4 |

**Additional Comments:** ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
## SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in <u>general education</u>?  ☐ Yes ☒ No

Explanation for removal out of regular education classroom.

Student requires small structured environment to accommodate disabilities

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SpEd | Total | FREQUENCY Hr./ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| Use of computer/calculator/slant board | 28.50 | 3.50 | 32.00 | Hrs | Week | classroom teacher | 03/16/2004 |
| Spell checker | 28.50 | 3.50 | 32.00 | Hrs | Week | classroom teacher | 03/16/2004 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations  for <u>testing</u>;  ☐ None needed

| | |
|---|---|
| Timing/Scheduling: | Time extensions |
| Setting: | |
| Presentation: | Assistance with interpretations of instructions |
| Response: | No penalties for spelling/mechanical errors |
| Equipment: | Spell checker, Use of computer/calculator/slantboard |

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ **Level I** Tested with non-disabled peers under standard conditions without accommodations.

☐ **Level II** (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☒ **Level III** (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ **Level IV** (Describe the alternative assessment)

☐ **Level V** Portfolio: _____

## XII. Areas Requiring Specialized Instruction and Related Services:        Modifications:

☒ Reading          ☐ Physical/Sensory        ☒ Transition          ☒ Language Arts/English

☐ Mathematics      ☐ Social Emotional        ☐ Vocational          ☒ Social Sciences

☒ Written Expression  ☐ Physical Development   ☐ Independent Living    ☐ Biological & Physical Sciences

☐ Other: _____                      ☐ Speech/Language        ☒ Fine Arts

☐ None      **Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.**

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| In General Education Classroom Setting | Rejected | |
| Combination General Education and Resource Classro | Accepted | Possibility of missing academic instruction during |
| | | |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

Provision of parallel instruction

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
**(IEP)**
MEETING NOTES

STUDENT DARIUS R            HILL            SCHOOL Ellington School of the Arts    DATE: 03/16/2004

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Cornelia Hill | | Parent |
| Katy Winn-Ritzenberg | | Special Ed Teacher |
| Alice Chandler | | General Ed Teacher |
| Sonja Oakcrum | | LEA Representative |
| John Payne | | Principal or Designee |
| Darius Hill | | Student |

Introduced participants
Purpose of meeting- annual review of IEP
Teacher progress reports state that Darius has made very good progress in English, increasing his vocabulary, testing well, and becoming more fluent in his reading. He has opened himself up for help, unlike a year ago. He is working on a research project right now and needs to keep up with all of the deadlines. In math, Mr. Burroughs states that Darius attends class and is improvement has been seen in doing his work and passing exams and quizzes. The teacher states that Darius is doing okay, but he could do better if he kept his concentration and focus.
Darius vocational interest is in the area of fashion design. He wants to own his own business and designs fashions. This interest is being addressed by the visual arts department at Ellington. Transition goals were written in this area. Darius has been referred to RSA.
On April 30, 2004, Darius turns 18 at which time the "transfer of rights" becomes effective.
Darius will receive 3.5 hours of specialized instruction.
Setting- combination general ed and resource room
Accomodations- time extensions, no penalties for spelling/ mechanical errors, assistance with interpretations of instructions, spell checker, use of computer/ calculator.
Testing level 3
Location- Ellington

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    IEP MEETING NOTES

## DOCUMENTED LEVEL OF SERVICE
Complete and attach to MDT/IEP meeting notes

| School | Ellington School of the Arts | Principal | M. Yates | Special Education Coordinator | K. Winn-Ritzenberg |

Date  03/16/2004   Case Manager  Sonja Lee                                    Assistant Director  Gregg Davis

Student  DARIUS R    HILL          DOB 04/30/1986  Age 17  Grade  11  ID# 7876743      SSN# 577130027

Parent  Ms. Cornelia Hill              Telephone (H) 678-0325          (W)

Address: 2244      Savannah Terr.                SE  #23      Washington            DC      20020
Street #   Street                                   Quad  Apt. No.   City                  State   Zip Code

REFERRAL SOURCE: (Check)  ☐ 120 Day  ☐ Reeval.  ☐ HOD  ☐ SA  ☐ MA  ☒ Annual

☐ Nonpublic  ☐ Residential  ☐ Citywide  ☐ Courts  ☐ Local School  ☒ Other:  Ellington

Previous least restrictive environment (LRE Setting):    Combination general education and resource classroom

---

## JUSTIFICATION FOR SETTING CONSIDERATION
(Submit TAT/MDT Documentation)
### SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/ MODIFICATIONS | 3. DATA REQUIREMENTS | | | |
|---|---|---|---|---|
| Time extensions, Spell checker, Use of computer/calculator/slantboard | Current IEP | Yes ☒ | No ☐ | |
| | Signatures of required participants (MDT notes) | Yes ☒ | | |
| | Intervention Behavior Plan | Yes ☐ | | |
| | Copies of current class work and homework assignments: | Yes ☒ | | |
| | Medical Reports: | Yes ☐ | No ☒ | |
| | Clinical Reports: | Yes ☐ | No ☒ | |
| | Psychiatric Reports: | Yes ☐ | No ☒ | |
| | Medications: | Yes ☐ | No ☒ | |
| | Attendance Record | Yes ☒ | | |
| | Copies of most recent evaluation(s) | Yes ☒ | | |

| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation |
|---|---|
| 10/1/03 Confer. with mother saying that Darius is doing well, grown up a lot, accepting help which he previously resisted.<br>2/04 Darius did extremely well in English, great on tests, learned a lot. | none |

---

### 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team.) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | ☐ in general education classroom setting | ☐ general educators with consultation from special education staff | ☒ between 0% and 20% of service time |
| 2 | ☒ combination general education and resource classroom | ☒ combination of general educators, special educators and related service providers | ☐ between 21% and 60% of service time |
| 3 | ☐ *out of general education classroom | ☐ special educators and related service providers | ☐ between 61% and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings)

### Check the level of need as indicated:
#### DIRECTIONS:

| | |
|---|---|
| If two or three boxes are checked in the Row 1, check LOW.<br>If two or three boxes are checked in the Row 2, check MODERATE.<br>If two or three boxes are checked in the Row 3, check HIGH. | If one box is checked in each row,<br>check either MODERATE or HIGH,<br>depending on the need of the student. |

### 7. LEVEL OF NEED

| ☐ LOW | ☒ MODERATE | ☐ HIGH |

07-02-2001                                    Attention: Technical Support Supervisor, Compliance Team

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### WASHINGTON, D.C.
### INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP  Page 1 of 4

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last _Hill_   First _Darius_   MI ___

Student ID _7896743_   Soc. Sec. No. _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_   Age: _18.10_   Grade _12_

Gender ☒M ☐F   Date of Birth _4/30/86_   Ethnic Group _African-American_

Address _2244 Savannah Terr., SE #23_

☐ Non-attending   _Washington, DC 20020_

Attending School _Ellington_   Home School _Ballou_

☐ Elem. ☐ Mid/JHS ☒SHS ☐CWS1

Parent _Ms. Cornelia Hill_

Address of (if different from student): ☒ Parent  ☐ Guardian  ☐ Surrogate

Telephone: Home _678-0325_   Work ___

## II. CURRENT INFORMATION

Date of IEP Meeting: _3/15/05_

Date of Last IEP Meeting: _3/16/04_

Date of Most Recent Eligibility Decision: _3/27/03_

Purpose of IEP Conference:
☐ Initial IEP   ☒ Review of IEP
☐ Requested Eval.   ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:
_N/A (Senior)_

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | | TRANSPORTATION |
|---|---|---|
| ESY | ☒ | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | Eng. | Eng. | |
| Parent | English | Eng. | Eng. | |
| Home | English | Eng. | Eng. | |

To be completed by Office of Bilingual Education English and Math Proficiency Assessment

Oral ___
Rdg / Written ___
Instrument: ___
Date: ___

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SpEd | Total | FREQUENCY Hrs./ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos |
|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | | 3.5 | 3.5 | hr. | wk. | Resource Room Teacher | 3/16/05 | 10 month |
| TOTAL | | 2.5 | 3.5 | Hours Per Week | | | | |

## V. Disability(ies)

_Learning Disabled_

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☒ 0-20%   ☐ 21-60%   ☐ 61-100%

Percent of time NOT in a Regular Education Setting _11_%

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

John F. Payne — _John F. Payne (Dean of Students)_

Katy Winn-Ritzenberg — _Sp Ed Teacher_

ALICE CHANDLER — _Teacher, Transition_

DARIUS HILL — _Darius Hill, Student (age of majority)_

_____ CARRUM — _Counselor_

_I AGREE_ with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP and consent to the implementation of the services in the IEP. I have received a copy of this pertaining to special education. I have received a copy of the procedural safeguards and parent rights

Parent/Guardian Signature _Darius Hill_   Date _3-15-05_

District of Columbia Public Schools   07-02-2001   Division of Special Education   Appendix - A   IEP Page 1 of 4

| Student Name | Darvis Hull | | | Managing School | Ellington | | DCPS - IEP |
|---|---|---|---|---|---|---|---|
| Student ID Number | 78%743 | | DOB 4/30/86 | Attending School | Elling | | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments:    Goal Number: 1

Area addressed by goal: *Academic*

**ANNUAL GOAL:** (including mastery criteria.)

> *Darvis will demonstrate one to two months growth in English by mastering the short-term objectives with 80% accuracy.*

Provider(s): *General education and special education teachers*

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1) After choosing a research topic of your choice, research it using library resources and complete an extensive research paper. | | bi-weekly |
| 2) Given a reading selection, read it, analyze it, recall details and summarize it. | | bi-weekly |
| | | |
| | | |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

(Portfolio)    Log    Chart    (Test)    Documented Observation    Report    Other *teacher conference*

STEP SIX

| Student Name | *Darius Hill* | Managing School | *Ellington* | DCPS - TRANSITIO SERVICES PLAN PAGE 1 OF 2 |
|---|---|---|---|---|
| Student ID Number | *7876743* | DOB *4/30/86* Attending School | *Ellington* | |

Date Developed: _____

## DCPS TRANSITION SERVICES PLAN

**Note:** The MDT determines if the IEP must include a statement of transition service needs which focuses on the Courses of study if the student will turn 14 during the implementation of the IEP. Furthermore, the MDT must include a detailed transition plan for a student who will turn 16 during the implementation of the IEP.

I. *Record student's post-secondary goals and interests.*

Employment: *Darius wants to open own fashion design*
Community Participation: *Put money back into busines*
Post-Secondary Education and Training: *Wants to attend community college*
Independent Living: *Live in his own apartment*

II. *Courses of study leading to student's post-high school goals.*

| Grade or School Year | Courses of Study |
|---|---|
| 12th | *Chem I, Eng IV, Prob/Stat* |
| 12th | *U.S. Gov't, DC History, Mus.* |
| 12th | *Host Lit I, Photo Jrn, Comp* |
| 12th | *Graph I, Art History, Drawing* |
| 12th | *IV, Portfolio* |

III. **Transition Services Needed.**
*Evaluate the student's present level of performance in the following areas: Academic, Career Courses, Community-based Training, Supported or Competitive Employment, Communication, Independent Living Skills, Community Travel, Transportation, Employability Skills, Social Skills, Community Resources, Educational, Financial, Career Training, Community-Based Instruction, Skill/Trade Training, Vocational, or Social Relationships.*

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| **Employment** If service is not needed, provide explanation. | *Take classes in the Visual Arts dept.* | *DCPS* |
| **Community Participation** If service is not needed, provide explanation. | *Completion of 100 hours of required community service* | *DCPS* |
| **Post - Secondary Education and Training** If service is not needed, provide explanation. | *Meet NSec counselor for post secondary prep* | *DCPS* |
| **Independent and Adult Living** If service is not needed, provide explanation. | *Self - sufficient* | *DCPS* |

| | |
|---|---|
| Student Name _Darius Hill_ | Managing School _Ellington_ |
| Student ID Number _9876743_  DOB _4/30/86_ | Attending School _Ellington_ |

DCPS - IEP
Page 3 of 4

**VIII. SPECIALIZED SERVICES**     Additional Comments:

Area addressed by goal: _Transition_

Goal Number: 2

**ANNUAL GOAL: (including mastery criteria.)**

_Darius will complete the following transition goals with a minimum accuracy of 80%._

Provider(s): _Special Ed Teacher, Counselors_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| _Take visual arts classes to address interest in fashion design_ | | _Qtrly_ |
| _Complete the 100 community service hours required for graduation._ | | _Qtrly_ |
| | | |
| | | |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

Portfolio     Log     Chart     Test     Documented Observation     (Report)     Other _____

| Student Name | Darius Hill | Managing School | Ellington | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 7896743 | DOB 4/30/86 | Attending School | Ellington | Page 4 of 4 |

## Additional Comments:

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
## SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education?     Yes     (No)

Explanation for removal out of regular education classroom.

Student requires a small structured enviroment to accomodate disabilitie.

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SpEd | Total | FREQUENCY Hr./ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

Check and list modifications and/or accommodations  for testing:          None needed

Timing/Scheduling: Time extensions

Setting:

Presentation: Assistance with interpretation of instruction

Response: No penalty for spelling / mechanical errors

Equipment: Spell checker, use of computer / calculator

## XI. STATE AND DISTRICT ASSESSMENTS:

Level I   Tested with non-disabled peers under standard conditions without accommodations.

Level III  (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

Level V  Portfolio:

Level II   (Describe accommodations for level II) Tested under standard conditions with special accommodations.

Level IV  (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

✓Reading
Mathematics
Written Expression
Other:
None

Physical/Sensory
Social Emotional
Physical Development

✓Transition
Vocational
Independent Living
Speech/Language

Modifications:
✓Language Arts/English
✓Social Sciences
✓Biological & Physical Sciences
Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| for general ed classroom setting | rejected |  |
| Combination gen ed and resource room | accepted | possibly of missing academic instru. |
|  |  |  |

Modification(s)/Accommodation(s) to address the harmful effects:

Provision of parallel instruction

Location for Services  Ellington

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**

**INDIVIDUALIZED EDUCATION PROGRAM**
**(IEP)**
**MEETING NOTES**

STUDENT _Darius Hill_          SCHOOL _Ellington_          DATE: _3/15/05_

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Darius Hill | Darius Hill | Student (age of majority) |
| Katy Winn-Ritzenberg | Katy V-R C | Spec Ed Teach |
| ALICE CHANDLER | Alice Chandler | Teacher (Gen Stu) Transition |
| SONJA OAKCRUM | Sonja Oakcrum | School Counselor |
| John Payne | John F. Payne | Dean of Students |

Introduced participants. Darius is 18 y.o. and transfer of rights have been give to Darius. Darius chose to represent himself at the IEP meeting.

Purpose of meeting – annual review of IEP and discussion of exiting spec ed due to graduation. Ms. Chandler, DC History teacher, proclaim Darius has gone from an "F" to an "A". He has prepared an extra essay which appears on the "Voice" website and is doing extremely well this advisory.

Ms. Winn-Ritzenberg, Eng. Teacher, states that Darius has earned a "B" and "A-" the last two advisories. This advisory, Darius' work in class and on tests have been good, but he need to keep up with all of his research paper due dates. Darius' reading and writing have improved since receiving help in the resource room.

Darius' vocational interest of wanting to own his own business as a fashion designer is being addressed in the VA dept. He has met with the rep for RSA on 12/9/04.

Darius is on track to graduate with a high school diploma in June, 2005. He has applied to college, was accepted at Art Institute of Philadelphia.

Darius will receive 3.5 hours of specialized instruction.
Setting: Provide general resource rm.
Testing: N/A (senior)
Accommodation: time extension, assistive interpret. of instruction, no penalties for spelling/mechanical errors, use of spell check, computer, calculator.
Location: Ellington
Darius does not qualify for Reg Ed or ESY at this time.

(In the Matter of DH  HOD: May 13, 2007)

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigation Division*
### CONFIDENTIAL
## Coles B. Ruff, Jr., Due Process Hearing Officer

| | | |
|---|---|---|
| In the Matter of Darius Hill | ) | **IMPARTIAL DUE PROCESS** |
| Date of Birth: April 30, 1986 | ) | |
| ("Student") | ) | **HEARING OFFICER'S DECISION** |
| | ) | |
| Petitioner, | ) | Hearing Date: May 1, 2007 |
| | ) | Record Closed: May 3, 2007[1] |
| v. | ) | Held at: 825 North Capitol St. NE |
| | ) | Washington, DC |
| | ) | |
| District of Columbia Public Schools | ) | |
| ("DCPS" or "District") | ) | |
| School: Duke Ellington School for | ) | |
| The Arts | ) | |
| Respondent. | ) | |

Counsel for Student:                Christine Fontaine-Covington, Esq.
                                    1220 L Street, NW #700
                                    Washington, DC 20005


Counsel for DCPS:                   Saurabh Gupta, Esq.
                                    Office of General Counsel
                                    825 North Capitol St. NE
                                    Washington, DC 20002

## JURISDICATION:

A Due Process Hearing was convened on May 1, 2007, at the headquarters of the District of Columbia Public Schools, 825 North Capitol Street, NE, Washington, DC 20002, in response to a due process complaint submitted by counsel for the student and parent filed January 31, 2007. The hearing was conducted and this decision was written pursuant to the *Individuals with Disabilities Act* (I.D.E.A.), P.L. 101-476, as amended by P.L. 105-17 and the *Individuals with Disabilities Education Improvement Act of 2004* (I.D.E.I.A.), the Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145, effective October 21, 1998.

## DUE PROCESS RIGHTS:

---

[1] The record was closed in this matter with the post hearing submission of case law by the petitioner. The petitioner had previously waived the right to a HOD within seventy-five days of the filing of the complaint.

(In the Matter of DH   HOD: May 14, 2007)

The parent's counsel waived a formal reading of the due process rights.

**SUMMARY OF THE RELEVANT EVIDENCE:**

The Hearing Officer considered the representations made on the record by each counsel, the testimony of the witness(es) and the documents submitted in the parties' disclosures (DH 1-44 and DCPS 1-2) which were admitted into the record.

**FINDINGS OF FACT [2]:**

1. The student is currently age twenty and graduated from Duke Ellington School of the Arts (Ellington) with a regular high school diploma in June 2005. (DH 13)

2. While at Ellington the student was found eligible as a child with a disability under IDEIA with a disability classification of learning disabled (LD). (DS 9)

3. The student's last individualized educational program (IEP) while he was attending Ellington was developed March 15, 2005, when he was in the twelfth grade and he was nearing age nineteen. The IEP prescribed the student receive 3.5 hours of specialized instruction weekly. The student's previous IEP prescribed the same level of services. (DS 8, 9)

4. The 2005 IEP indicated that the student's disability impacted his educational performance in the general education curriculum in the following manner: "decoding and phonetic skills hamper [the student's] ability to consistently recognize and pronounce unfamiliar words." The present levels of performance listed in the IEP which were derived from a February 27, 2003, assessment, indicated the student was operating at the 4.0 grade level in reading comprehension, at the 5.9 grade level in basic reading and at the 4.8 grade level in written expression. (DS 9)

5. The IEP contained one academic goal: "...demonstrate one to two month's growth in English by meeting the short term objectives with 80% accuracy. The two short term objectives were: "1) after choosing a research topic of your choice, research it using library resources and complete an extensive research paper. 2) Given a reading selection, read it analyze it, recall details and summarize it." (DS 9)

---

[2] The evidence that is the source of the finding of fact is noted within a parenthesis following the finding.

2

(In the Matter of DH   HOD: May 14, 2007)

6.  The DCPS Academic Performance Database System (APDS) recorded the
    following three year report of the student's academic abilities/performance in
    Reading and Math as measured by grade equivalence:

|  | 2002 - 9th grade | 2003 - 10th grade | 2004 - 11th grade |
|---|---|---|---|
| Reading: | 5.1 | 5.5 | 5.8 |
| Math: | 9.9 | 9.2 | 7.2      (DS 9) |

7.  The student participated his last IEP meeting at Ellington on March 15, 2005, as
    did his special education and general education teachers.  The teachers indicated
    the student's academic performance had improved, he was on tract to receive a
    high school diploma and he had applied and been accepted to college at the Art
    Institute of Philadelphia.  (DS 10)

8.  In December 2004, the student's special education teacher Ms. Katy Winn-
    Ritzenberg wrote a college recommendation for the student.  In the letter she
    noted the following:

    "[the student has taken English with me and in the Resource Room for the
    past year and a half.  Here his learning disability needs had been met and
    he participated in inclusion classes for all of his subjects.  His disability
    primarily impacts his reading and written language abilities.  He has some
    problems decoding words and his somewhat weak phonetic skills impact
    his reading speed and accuracy.  Though [he] still has some written
    language weaknesses, he made good progress in this area.  [His]
    vocabulary skills have grown tremendously and he is able to apply these
    more and more in writing and conversation.  Artistically, [he] is a talented
    student who is motivated to grow and succeed in his design business.
    With support services and assistance for learning disabled students from
    the college, [he] will be able to compensate for his disability and be
    successful in his pursuit of higher education."        (DH 35)

9.  The student was Visual Arts major at Ellington and consistently received
    specialized instruction in Reading and Writing.  In June 2005 he graduated having
    met all the requirements for a regular high school diploma.  He graduated with a
    cumulative grade point average in of 2.257.  He was and is apparently an
    excellent artist, and received above average grades (As and Bs) in his classes
    within his Art major.  However, he passed most of his regular education class
    with a "D" grade: English 1, English II, US History and DC History.  He received
    a grade C- in English III, and C in English IV.

10. The student had difficulty in his general education classes.  His teachers knew that
    he was a special education student and the work the student was able to do was

sufficient for him to pass the classes although barely. No one said to the student during his final year of high school that he could have opted not to graduate from high school and continue his special education services. (Student's testimony)

11. The student claimed that no one ever informed him that he was actually operating on a 5th grade level in Reading while he was attending Ellington. He knew that he was receiving special education instruction in Reading and Writing but believed once he graduated he had been adequately prepared to meet the demands of college. (Student's testimony)

12. The student began attending the Art Institute of Philadelphia (AIPH) in September 2005 and continued to attend until June 2006. The student passed a placement test at AIPH and the college was aware he was a special education student. The student took a total of five classes and received the following grades at AIPH:[3]

| Course | Grade |
| --- | --- |
| Fashion History | C+ |
| Introduction to Manufacturing | D |
| Basic Writing | D |
| Basic Algebra | A- |
| Computer Science | B |

(Student's testimony, Parent's testimony, DH 42)

13. When the student was not successful in his Basic Writing class he realized he needed to apply more effort. Although AIPH apparently had tutoring services available the student did not know these services were available to him and/or did not take advantage of them. (Student's testimony, Student's appeal letter – DH 42)

14. The student at first received a grade of "D" in the Basic Writing class. The student was able meet with the Basic Writing teacher and his grade in that course was raised from "D" to "C-". However, because the student did not complete the course with a grade of at least full "C" he was dismissed from AIPH. In July 2006, the student appealed his dismissal; however, his appeal was unsuccessful. (Student's testimony, Parent's testimony, DH 42)

15. After losing his appeal to be reinstated to AIPH he returned to Washington DC and has attempted to enroll at the University of the District of Columbia but has not yet taken a placement exam he has been informed is required. Currently, the student is employed as an Art instructor/aide at a local public charter school. The student hopes to receive some level of remediation services and return to AIPH at some point to obtain his degree in fashion design. (Student's testimony, Parent's testimony, DH 42)

---

[3] The student's cumulative grade point average at the end of his year at AIPH was 2.1.

(In the Matter of DH   HOD: May 14, 2007)

**ISSUE(S):** [4]

1. Is the student's claim of a denial of FAPE under IDEIA barred because he has graduated from high school with a regular diploma?

2. If the student claim is not barred was he denied FAPE by reason of the inappropriateness of his March 2005 IEP? [5]

**CONTENTIONS OF THE PARTIES:** [6]

The parent's counsel asserted the following:

1. The student's claim for compensatory education is not barred by his graduation from high school.
2. The student was not provided the option to not graduate from high school as of the time of his March 2005 IEP, despite the fact he was performing at a 5th grade level in Reading.
3. The student's IEP and program at Ellington was insufficient to prepare him for high school graduation and for college.
4. The student IEP level of instruction and goals were not changed from year to year and were totally inappropriate for the Reading and Writing level on which he was operating while at Ellington.

DCPS counsel asserted the following:

1. The student's graduation with a high school diploma bars relief.
2. DCPS' obligation to provide the student FAPE ended upon the student's graduation.
3. Even if the claim is not barred there has been insufficient evidence of a denial of FAPE.
4. There has also been no evidence presented to establish what if any compensatory education the student is due.

---

[4] The alleged violation(s) and/or issue(s) raised in the complaint may or may/not directly correspond to the issue(s) outlined here. However, the issue(s) listed here were reviewed during the hearing and clarified and agreed to by the parties as the issue(s) to be adjudicated.

[5] The student's complaint was filed in January 2007 and under the IDEIA's "statute of limitation" a claim may be brought within two years of date student knew or should have known of the claim. Thus, the student's alleged claim that his March 2005 IEP fell within the required time frame.

[6] The contentions are the arguments made by opposing counsel and do not reflect any findings or conclusions made by the Hearing Officer.

(In the Matter of DH   HOD; May .--, 2007)

## CONCLUSIONS OF LAW:

Pursuant to IDEIA §1415 (f)(3)(E)(i) a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education (FAPE).

Pursuant to IDEIA §1415 (f)(3)(E)(ii) in matters alleging a procedural violation a hearing officer may find that a child did not receive FAPE only if the procedural inadequacies impeded the child's right to FAPE, significantly impeded the parent's opportunity to participate in the decision making process regarding provision of FAPE, or caused the child a deprivation of educational benefits.

Pursuant to 5 DCMR 3030.3 the burden of proof is the responsibility of the party seeking relief. [7] In this case the student is seeking relief and has the burden of proof that the action and /or inaction or proposed placement is inadequate or adequate to provide the student with FAPE.

1. Is the student claim under IDEIA barred because he has graduated from high school with a regular diploma?  The student's counsel sustained the burden of proof.

34 CFR 300.102 provides the obligation to make FAPE available to all children with disabilities does not apply with respect to the following: ...Children with disabilities who have graduated from high school with a regular high school diploma.

The student's counsel has cited case law, however, to support the proposition that a student's claim for compensatory education is not automatically mooted by a student's high school graduation.[8]  Although the case law cited is not from our jurisdiction it is none the less persuasive that for a claim of denial of FAPE that occurred prior to the student's graduation can survive high school graduation.

2. If the student claim is not barred was he denied FAPE by reason of the inappropriateness of his March 2005 IEP?  If the student claim is not barred was he denied FAPE by reason of the inappropriateness of his March 2005 IEP? Conclusion: The student's counsel did not sustain the burden of proof.

Student's counsel asserts that given the student's level of reading and written expression abilities while he was attending Ellington the student should have been provided a greater level of special education services to address his academic deficits and/or the student should have been given the option not to graduate.  However, it appears from the

---

[7] Based solely upon the evidence presented at the hearing, an impartial hearing officer shall determine whether the party seeking relief presented sufficient evidence to meet the burden of proof that the action and /or inaction or proposed placement is inadequate or adequate to provide the student with FAPE.

[8] San Deiguito Union High School v. Jeffrey Guray Jacobs 44 IDELR 189 (2005) citing Zobrest v. Catalina Foothills School Dist. 509 U.S. 1 (1993), and Sammons v. Polk County School Board 46 IDELR 283 (2006) and Ambler v. Wissahickon School District 44 IDELR 153, (2005)

(In the Matter of DH  HOD: May 14, 2007)

student's high school transcript he sufficiently passed the general education classes that were required to obtain a high school diploma. Although it is apparent that the student has difficulty in reading and writing and the last official assessment in 2003 measured his reading abilities at the fifth grade level, there is no requirement that has been cited by student's counsel or that the Hearing Officer is aware of that required the student's reading ability be at a certain grade level. Although the student was provided 3.5 hours of specialized instruction in Reading and Writing, there was insufficient evidence that this instruction was sufficient for him to meet the general education requirements although barely.

The student was admitted to college and took and apparently passed a placement test to attend AIPH. He also received a grade point average of 2.1 in his first year at AIPH. The student was finally given a C- in the Basic Writing course at AIPH and would have presumably been reinstated had that grade been a full C. Additional tutoring was available to the student AIPH which the student did not apparently know about early enough at AIPH to pass the basic Writing course.

While the Hearing Officer empathizes with the student's situation and applauds his talent and great efforts, the evidence presented was not sufficient for the Hearing Officer to conclude the student was denied FAPE by DCPS. As a special education student there is no guarantee the instruction a student will receive will help him or her reach any particular grade level of proficiency in reading. Similarly, with regard to general education there does not appear have been any proficiency standard in reading and writing the student needed to have met at the time of his graduation in order to graduate.

The IEP meeting notes from March 2005 indicate the student's teachers believed he was making sufficient progress with the specialized instruction he was receiving and was on tract to graduate. Therefore, the Hearing Officer concludes the student's March 2005 IEP was appropriate.

Although the student stated he was not aware that the choice to not graduate was an option available to him, the Hearing Officer does not conclude that the fact he was not aware of the option amounts to a denial of FAPE. It appears based on the student's application and acceptance to college at the time of the IEP meeting the student had made an affirmative choice to graduate from high and attend college.

Hopefully, the student can identify resources available in the community and/or through DCPS voluntarily that will enable him to progress to a level that he can ultimately be readmitted to AIPH and be successful there if that is what he chooses or attend some other college of his choose. However, there is no evidence to support a claim that DCPS is obligated to provide the student any form of compensatory education.

**ORDER:**

The complaint in this matter is hereby dismissed.

(In the Matter of DH   HOD: May 14, 2007)

**APPEAL PROCESS:**

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.

Coles B. Ruff, Esq.
Hearing Officer
Date: May 14, 2007

Issued:   5/14/07

8



(In the Matter of DH   HOD: May 14, 2007)

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigation Division*
### CONFIDENTIAL
### Coles B. Ruff, Jr., Due Process Hearing Officer

| | | |
|---|---|---|
| In the Matter of Darius Hill | ) | **IMPARTIAL DUE PROCESS** |
| Date of Birth: April 30, 1986 | ) | |
| ("Student") | ) | **HEARING OFFICER'S DECISION** |
| | ) | **on Petitioner's Motion for** |
| | ) | **Reconsideration** |
| Petitioner, | ) | Hearing Date: May 1, 2007 |
| | ) | Held at: 825 North Capitol St. NE |
| | ) | Washington, DC |
| District of Columbia Public Schools | ) | |
| ("DCPS" or "District") | ) | |
| School: Duke Ellington School for | ) | |
| The Arts | ) | |
| Respondent. | ) | |

Counsel for Student:

Christine Fontaine-Covington, Esq.
1220 L Street, NW  #700
Washington, DC  20005

Counsel for DCPS:

Saurabh Gupta, Esq.
Office of General Counsel
825 North Capitol St. NE
Washington, DC  20002

## ORDER

A Due Process Hearing was convened on May 1, 2007, at the headquarters of the District of Columbia Public Schools, 825 North Capitol Street, NE, Washington, DC 20002, in response to a due process complaint submitted by counsel for the student and parent filed January 31, 2007.   A Hearing Officer's Determination (HOD) was issued in this matter on May 14, 2007.  The petitioner filed a motion for reconsideration of the HOD based upon the Hearing Officer having an affiliation with the school against which the complaint was filed.  In order to dispel any appearance of impropriety, the Hearing Officer hereby grants the motion of reconsideration and grants the petitioner a right to a de novo due process hearing on the original complaint.   The date for the de novo hearing shall be set by the DCPS Student Hearing Office and notice provided to the parties.

_____
**Coles B. Ruff, Esq.**
**Hearing Officer**
**Date: June 11, 2007**

Issued: __6/11/07__

EXHIBIT 7

# District of Columbia Public Schools
## State Enforcement and Investigation Division
## For Special Education Programs
Van Ness Elementary School
1150 5th St., S.E., Washington, D.C. 20003
Phone: (202) 698-3819
Facsimile: (202) 442-5556

## CONFIDENTIAL

| | | |
|---|---|---|
| In Re the Matter of: | ) | |
| | ) | |
| Darius Hill, ("Student"), | ) | |
| Date of Birth: April 30, 1990 | ) | |
| | ) | **DATE OF HEARING:** |
| Petitioner, | ) | July 3, 2007 |
| | ) | |
| | ) | |
| v. | ) | **Motion to Dismiss** |
| | ) | |
| | ) | |
| The District of Columbia Public Schools | ) | **ATTENDING SCHOOL:** |
| 825 North Capitol Street, N.W. | ) | Duke Ellington School for the |
| Washington, D.C. 20002 | ) | Arts |
| ("DCPS" or "District"), | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

The matter before this Hearing Officer, is Respondent's Motion to Dismiss Petitioner's Administrative Due Process Complaint, for lack of jurisdiction, filed on July 12, 2007; and Petitioner's Response to Defendant's Motion to Dismiss .

On January 31, 2007, Petitioner filed a due process complaint. On May 1, 2007, a due process hearing was held on the complaint. On May 14, 2007, after a hearing on the merits, the Hearing Officer issued a final decision, on behalf of the SEA, pursuant to 34 C.F.R. Section 300.507 through 300.513, dismissing the complaint, on the grounds that Petitioner failed to present evidence, that the student is entitled to compensatory education.

On May 25, 2007, Petitioner filed a Motion for Reconsideration of the HOD, based on the Hearing Officer's failure to disclose to the parties an affiliation with the school, and personnel, referenced in the complaint.

On June 11, 2007, the Hearing Officer granted Petitioner's Motion for Reconsideration, and a "de novo due process hearing on the original complaint", explaining that the Motion was granted "in order to dispel any appearance of impropriety".

On June 12, 2007, DCPS filed a Motion to Dismiss Petitioner's Administrative Due Process Complaint, alleging: 1) The Hearing Officer does not have jurisdiction to hear a "de novo due process hearing" request, because all Hearing Officer decisions are final; and 2) The IDEIA allows two avenue to review a Hearing Officer Decision; and 3) Petitioner has no right of appeal to the Student Hearing Office, because the hearing was conducted by the State Education Agency (SEA).

On July 12, 2007, Petitioner filed a Response to Defendant's Motion to Dismiss Petitioner's Administrative Due Process Complaint, asserting that: 1) pursuant to the Standard Operating Procedures Manual, Section 1005, reconsideration of a hearing decision may be granted on the timely filing of a motion for reconsideration; 2) if the motion is timely filed, the order shall not be deemed final for purposes of judicial review, until the motion is ruled upon by the Hearing Officer or is denied by the operation of law; and 3) challenging DCPS's argument that the Hearing Officer lacks jurisdiction to grant a de novo hearing.

Based on the Hearing Officer's decision of June 11, 2007, granting Petitioner's Motion for Reconsideration, and a "de novo due process hearing on the original complaint; Respondent's Motion to Dismiss Petitioner's Due Process Complaint, for lack of jurisdiction, and Petitioner's Response to the Motion, this matter is now before this Hearing Officer, for decision.

**Motion for Reconsideration**

The Special Education Student Hearing Office, Due Process Hearing, Standard Operating Procedures Manual, Section 1005, provides in pertinent part:

"Reconsideration of a hearing decision *may* be granted on the timely filing of a motion for reconsideration."

"Unless otherwise ordered by the hearing officer, the filing of a motion for reconsideration shall not stay the effectiveness of the order. The filing of a motion for reconsideration on a final order, if such motion is timely filed, the order shall not be deemed final for purposes of judicial review until the motion is rules upon by the Hearing Officer or is denied by operation of law."

"If a motion for reconsideration is granted, the Hearing Officer may reopen the record in the matter, amend the findings of fact and conclusions of law, correct errors or mistakes, or make new findings of fact, conclusions of law, and issue a new order."

In this matter, the Hearing Officer convened the due process hearing and rendered a final decision in the merits, dismissing the complaint for lack of evidence. Thereafter, Petitioner filed a Motion for Reconsideration, asserting that the Hearing Officer violated his duty to disqualify himself from hearing the complaint, because his children attend the school which was the subject of the complaint; and requested a de novo hearing by an impartial due process hearing officer. The Hearing Officer granted Petitioner's Motion for Reconsideration, "to avoid any appearance of impropriety or partiality"

As indicated supra, reconsideration of a hearing decision *may* be granted on the timely filing of a motion for reconsideration," and in this matter, Petitioner timely filed a motion for reconsideration. However, it is this Hearing Officer's determination that there were several procedural errors. More specifically:

Although the SOP grants a Hearing Officer the authority to grant a Motion for Reconsideration, such authority is limited to either affirming or reversing his initial order, and consistent with this limited authority, is authorized to amend the findings of fact and conclusions of law, correct errors or mistakes, or make a new findings of fact, conclusions of law, and issue a new order.

In this matter, the Hearing Officer failed to exercise the limited authority granted, in SOP, Section 1005; and instead granted Petitioner's Motion for Reconsideration and a de novo hearing on the complaint. According to the SOP, Hearing Officers are not authorized to grant a "de novo hearing on the complaint". Therefore, the Hearing Officer erred in granting Petitioner's Motion for Reconsideration; because he lacked the authority to grant the relief requested in the Motion for Reconsideration, that is, a de novo hearing on the complaint, and therefore, should have been denied.

**Procedures for Disqualifying a Hearing Officer**

Standard Operating Procedure (SOP), Section 600.2 provides in pertinent part:

"Any party to a hearing may challenge the assignment of a particular Hearing Officer. If any party to the hearing objects to the assigned Hearing Officer based on conflict of interest, bias or other reason, the objection shall be presented to the Hearing Officer in writing not less than five (5) business days *prior* to the date of the hearing."

"All requests for recusal based on allegations of bias shall be reviewed by the Director of the SHO or an impartial and independent person, designated by the Director of the SHO, who meets the qualifications required for a hearing officer outlined above. In the event that the allegation of bias is substantiated, or upon a determination that it is in the best interests of the subject and the parties, the Student Hearing Office shall assign a different Hearing Officer to the case within 2 business days."

3

In this matter, Petitioner failed to follow SOP, Section 600.2, which sets forth specific procedures for disqualifying a Hearing Officer. Also, Petitioner failed to properly and timely raise objections to the Hearing Officer, scheduled to preside over the May 1, 2007 hearing, *prior to the date of hearing*, and instead, after the hearing, filed with the Hearing Officer, a Motion for Reconsideration.

This Hearing Officer finds that the Hearing Officer's decision to grant Petitioner's Motion for Reconsideration, based on mere allegations, that the Hearing Officer in the prior proceeding, had an affiliation with the school and its personnel, and failed to disclose this fact to Petitioner, was a premature determination, and in error. The standard for an impartial Hearing Officer is: "At a minimum a Hearing Officer must not be a person having a personal or professional interest *that conflicted with his/her objectivity in the hearing*. *See 34 C.F.R. Section 300.511*. At the time Petitioner filed the Motion for Reconsideration, a determination of whether the Hearing Officer failed to comply with the requirement of IDEA, had not been made, because Petitioner failed to follow the proper procedures for disqualifying the Hearing Officer. Therefore, the Hearing Officer's decision to grant Petitioner any relief, was premature, as well as, inconsistent with the SOP provisions pertaining to a Hearing Officer's authority in responding to Motions for Reconsideration; and the process for disqualifying a Hearing Officer.

Assuming arguendo, the Hearing Officer had an affiliation with the school of personnel, Petitioner failed to introduce suficient evidence that the Hearing Officer had a *personal or professional interest that conflicted with his objectivity in the hearing*, requiring that he disqualify himself from the hearing, as required by IDEA. *See, 34 C.F.R. Section 300.511(c)(1)(i)(B)*. Furthermore, at the time the Motion for Reconsideration was filed, the Hearing Officer had heard the complaint, and issued a final decision, therefore rendering a determination regarding recusal, a "moot" issue.

**Finality of Hearing Officer's Decision**

34 C.F.R. Section 300.511(b) provides in pertinent part:

"... The hearing described in paragraph (a) of this section must be conducted by the State Educational Agency (SEA) or the public agency directly responsible for the education of the child, as determined under State statute."

34 C.F.R. Section 300.514(a) provides:

"A decision made in a hearing conducted pursuant to Section 300.507 through 300.513 or Section 300.530 through 300.534 is *final*, except that any party involved in the hearing may appeal the decision under the provisions of paragraph (b) of this section and Section 300.516."

Furthermore, 20 U.S. C. Section 1415(i)(1) provides:

"A decision made in a hearing conducted pursuant to subsection (f) or (k) of this section *shall* be *final,* except that any party involved in such hearing may appeal such decision under the provisions of subsection (g) of this section and paragraph (2) of this subsection."

Subsection (g) of this section pertains to the right of an aggrieved party to appeal to a State Educational Agency (SEA), decisions rendered by a local education agency, any party aggrieved by the findings and decisions rendered in such a hearing. Paragraph (2) pertains to an aggrieved party's right to file a civil action with respect to a complaint presented pursuant to this section.

According to 34 C.F.R. Section 300.514(b), if a hearing required by Section 300.511 is conducted by a public agency *other* than the SEA, any party aggrieved by the findings and decision in the hearing *may appeal to the SEA.*

According to 34 C.F.R. Section 300.516:

"Any party aggrieved by the findings and decision made under Section 300.507 through 300.513 or Section 300.530 through 300.534, who does not have the right to an appeal under Section 300.514(b), and any party aggrieved by the findings and decision under Section 30.514(b), has the right to bring a *civil action* with respect to the due process complaint notice requesting a due process hearing under Section 300.507 or Sections 300.530 through 300.532. This action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy."

According to 34 C.F.R. Section 300.516(b):

"The party bringing the action shall have *90 days from the date of the decision of the hearing officer* or, or applicable, the decision of the State review official, to file a civil action, or, if the State has an explicit time limitation for bringing civil actions under Part B of the Act, in the time allowed by that State law." In this matter, Petitioner had 90 days from the date of the Hearing Officer's decision of May 14, 2007, to appeal the decision.

It is this Hearing Officer's determination that Petitioner failed to introduce any evidence that the final decision issued by the Hearing Officer on May 14, 2007, dismissing Petitioner's complaint, was arbitrary, capricious, or represents a mistake of fact of law. Therefore, absent such a finding, it is this Hearing Officer's determination that the Hearing Officer's decision of May 14, 2007, is valid, representing a final decision on the complaint.

Based on the aforementioned, it is this Hearing Officer's determination that:

(1)  Petitioner failed to follow Standard Operating Procedures, Section 600.2, representing the procedures for disqualifying a Hearing Officer.  Failure to follow proper procedures and timely raise the issue regarding the Hearing Officer in this matter; constitutes procedural error, however, it is not grounds for granting Petitioner a de novo due process hearing, on the original complaint.

(3)  Consistent and as required by IDEA, the SEA held a due process hearing on May 1, 2007, on the issues raised in the complaint, and rendered a final decision on May 14, 2007.  Petitioner was provided a fair and impartial hearing; the matter was adjudicated; and the decision is final and binding, on the parties.  To that end, Petitioner has exhausted her administrative remedies.

(4)  Standard Operating Procedure, Section 1005 sets forth the limitations of the Hearing Officer's authority and the purpose for which Motions for Reconsideration are granted.  The SOP does not grant Hearing Officers authority, to grant parties a de novo hearing on a complaint.  Therefore, the Hearing Officer lacked the authority to grant Petitioner a de novo hearing on the complaint.  Furthermore, a Motion for Reconsideration is not the appropriate procedure for disqualifying Hearing Officers.  See, SOP, Section 600.4.

Also, although the Hearing Officer had the authority to grant a Motion for Reconsideration; because he lacked the authority to grant the relief requested in the Motion, that is, a de novo hearing on the complaint, the Motion for Reconsideration should have been denied, and reference made to SOP, Section 600.4, which governs disqualification of a Hearing Officer. This constitutes procedural error.

(5)  It is undisputed that a hearing on the complaint was held on May 1, 2007, and a final decision, rendered on May 14, 2007, in accordance with IDEA. The May 14, 2007 decision issued by the Hearing Office, advised Petitioner of his right to appeal the Hearing Officer's decision, within 90 days, to a court of competent jurisdiction. According to IDEA, governing laws, rules, and regulations, once a *final* decision is rendered, the decision may be appealed to any State court of competent jurisdiction or in a district court of the United States.

(6)  This matter is not properly before this Hearing Officer, although Hearing Officers have jurisdiction to preside over de novo due process hearing, if the appropriate procedures for pursuing a de novo hearing on a complaint, are followed.

In this matter, absent a finding by the SHO that Petitioner complied with the procedures for disqualifying the Hearing Officer in the prior proceeding, and a determination that the appropriate relief is a de novo hearing on the complaint; or a determination by the SHO to disqualify the former Hearing Officer from hearing the complaint, and the Hearing Officer was recused, resulting in appointment of this Hearing-

6

Officer as a replacement, in accordance with SOP, Section 600.4, this Hearing Officer lacks the authority to conduct a de novo hearing on this complaint.

Furthermore, recusal of the former Hearing Officer is a "moot" issue, since SOP, Section 600.4 (1) requires that objections to the assigned Hearing Officer based on conflict of interest, bias or other reason, must be presented to the Hearing Officer in writing not less than five (5) business days, *prior to the date of the hearing*. On May 14, 2007, the Hearing Officer rendered a final decision on the complaint, and on May 25, 2007, Petitioner filed a Motion for Reconsideration, seeking the Hearing Officer's recusal. Therefore, Petitioner failed to timely and properly, raise the issue regarding the Hearing Officer's disqualification to hear the complaint, in accordance with SOP, Section 600.4, rendering the issue "moot", and not ripe for decision.

(7) In this matter, DCPS filed a Motion to Dismiss Petitioner's Administrative Complaint, for lack of jurisdiction, although the relief requested was to deny Petitioner a de novo hearing on the complaint. The SHO has the authority and jurisdiction to convene a de novo due process hearing. However, in this matter, due to several procedural errors, a de novo hearing cannot be granted, Had these procedural errors not occurred and the former Hearing Officer recused; the SHO could rightfully appoint another Hearing Officer as a replacement; and jurisdiction would be appropriate.

Also, dismissal of the complaint at this juncture is inappropriate. On May 14, 2007, the Hearing Officer issued a final decision, dismissing the January 31, 2007 complaint. That decision is final, and binding on the parties, and therefore, any issue regarding dismissal of the complaint is "moot".

Therefore, it is hereby:

**ORDERED**, that Respondent's Motion to Dismiss Petitioner's Due Process Complaint, due to lack of jurisdiction, is **DENIED**; and it is further

**ORDERED**, that the Hearing Officer's decision issued on June 11, 2007, granting Petitioner Motion for Reconsideration, and a de novo hearing on the complaint is **VACATED**; and it is further

**ORDERED**, that the de novo hearing scheduled for July 17, 2007, at 1:00 p.m., is hereby **VACATED,** with prejudice.

Date Filed: _7·17·07_

Attorney Ramona Justice-Pegues
Hearing Officer

Date Issued: _____

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| Darius Hill ("Student") | ) |
| Date of Birth: April 30, 1986 | ) |
|         Petitioner, | ) |
| | ) |
| | ) |
|        v. | ) |
| | ) |
| | ) |
| District of Columbia Public Schools | ) |
| 825 North Capitol Street, NE | ) |
| Washington, DC 20002 | ) |
| ("DCPS" or "District") | ) |
| | ) |
| | ) |

## PLAINTIFF'S MOTION FOR RECONSIDERATION

**COMES NOW**, the plaintiff, Mr. Darius Hill, by and through his educational

attorneys, the law offices of James E. Brown & Associates, PLLC, in submission of this

Motion for Reconsideration of the impartial hearing officer's decision and order

(hereinafter "order" or "decision") issued on May 14, 2007, wherein the Plaintiff's

Administrative Due Process Complaint was dismissed.

### FACTUAL BACKGROUND

The Petitioner began receiving special education services in 2003 while attending

duke Ellington School of the Arts. Although his reading /language and written expression

skills were on the 4/5[th] grade level the student graduated from DESA in June 2005 with a

regular high school diploma. The petitioner's IEP prescribed 3.5 hours of specialized

instruction per week with nearly identical goals the entire 2 1/2 years the student received

special education services.

The student attended the Art Institute of Philadelphia after graduation. He did well in most of his classes except Basic Writing which he failed two times before finally passing the course with a "D". the student was dismissed from the Art Institute. He appealed his dismissal bit still not allowed to re-enroll at the Art School. Student has been very reluctant and fearful of taking the placement exam needed to enroll at UDC although he emphatically stated that he would like to return to college and complete his degree in fashion design.

On January 31, 2007, the student by and through counsel filed an administrative due process complaint stating the following issue: DCPS' failure to develop an adequate IEP to address the student's disability is a violation of the IDEIA.

DCPS filed a Motion to dismiss the student's complaint stating the student's graduation from high school bars relief, DCPS' obligation to provide the student FAPE ended upon the student's graduation and that there was insufficient evidence of a denial of FAPE. Student's Counsel filed a Response to DCPS' Motion to Dismiss however; neither motion was ruled upon before the due process hearing.

The administrative due process hearing was held on May 1, 2007 and the Hearing Officer rendered his decision on May 14, 2007. At no time before or during the hearing did the hearing officer advise either party that he had an affiliation with the school and school personnel mentioned in student's complaint.

**1. The Hearing Officer had a duty to disqualify himself from deciding any matters for which he might have a personal connection or prior knowledge or barring recusal the hearing officer had a duty to disclose the facts surrounding his involvement with the school in question so as to avoid any appearance of impropriety or partiality.**

The District of Columbia Public Schools Special Education Student Hearing office Due Process Hearing Standard Operating Procedures Manual states" To ensure impartiality, every Hearing Officer is held to the American Bar Association's Code of Judicial Conduct." Thus the rules governing disqualification would be applicable to the matter at hand.  Canon 3 E (1) (a) of the ABA code of Judicial Conduct reads as follows:

**(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:**

**(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge\* of disputed evidentiary facts concerning the proceeding;**

The ABA commentary to this Canon section clearly states "Under this rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless whether any of the specific rules in Section 3E (1) apply.   In the matter at hand the hearing officer did not inform the parties that his children currently attend the school against which the complaint was filed and that he knew the staff specifically mentioned in the case.  Although the hearing officer may not have let his ongoing relationship with the school and the school's staff influence his decision he was

nevertheless required to disqualify himself from the case so as to avoid even a scintilla of an appearance of partiality or impropriety.

Even if the hearing officer did not feel that he should be disqualified he could have availed himself of the process that would have allowed him to disclose the information and given the parties the chance to waive his disqualification but he did not. Canon 3 F provides for a Remittal of Disqualification "A judge disqualified by the terms of Section 3E may disclose on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, out of the presence of the judge, whether to waive disqualification. If following disclosure of any basis for disqualification other than personal bias or prejudice concerning a party, the parties and lawyers, without participation by the judge, all agree that the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding. "

The Commentary to this section further explains the process for disclosing any potential bias:

"A remittal procedure provides the parties an opportunity to proceed without delay if they wish to waive the disqualification. To assure that consideration of the question of remittal is made independently of the judge, a judge must not solicit, seek or hear comment on possible remittal or waiver of the disqualification unless the lawyers jointly propose remittal after consultation as provided in the rule. A party may act through counsel if counsel represents on the record that the party has been consulted and consents. As a practical matter, a judge may wish to have all parties and their lawyers sign the remittal agreement."

Unfortunately this process was not followed either and the hearing proceeded even though the hearing officer knew or should have known that he was required to at the very least disclose his association with the school and the school staff.

## CONCLUSION

The hearing officer had a duty to disclose to the parties that he personally knew some of the teachers that were mentioned in the complaint and that his children currently attend the school against which the complaint was filed. The hearing officer's decision may or may not have been influenced by his relationship with the school, however he should have disqualified himself from hearing the case so as to not to even have the mere appearance of bias or partiality.

## CERTIFICATE OF SERVICE

I, Christie Fontaine Covington, Esq., hereby certify that on this 25th day of May 2007, a

copy of the Plaintiff's Motion To Reconsider was delivered this day, via facsimile, to

Saurabh Gupta, Attorney Advisor for DCPS, 825 North Capitol Street, NE 9th Floor,

Washington, DC 20002 and the Impartial Due Process Hearing Officer Coles B. Ruff,

Student Hearing Office, District of Columbia Public Schools, 825 North Capitol Street,

8th Floor, Washington, DC 20002.

Respectfully Submitted,

Christie Fontaine Covington, Esq.
James E. Brown & Associates
1220 L Street, NW Suite 700
Washington, D.C. 20005
(202) 742-2000
Attorney for the Student

In the Matter of     )
          )
Darius Hill ("Student")   )
Date of Birth: April 30, 1986 )
    Petitioner,   )
          )
          )
    v.     )
          )
          )
District of Columbia Public Schools )
825 North Capitol Street, NE )
Washington, DC 20002  )
("DCPS" or "District")   )
          )
_____)

## ORDER

   Upon consideration of the Plaintiff's Motion for Reconsideration and it is

hereby **ORDERED** this _____ day of _____ 2007 that the Motion for

Reconsideration is **GRANTED** and the ORDER of the Impartial Due Process Hearing

Officer dated May 14, 2007.  The following relief is **ORDERED**:


1. A finding that the hearing officer violated his duty to disqualify himself from hearing

this matter because he had personal knowledge of the school staff mentioned in the

complaint because his children currently attend the school against which the complaint

was brought.

2. The student respectfully requests a de novo hearing of his complaint by an impartial

due process hearing officer as soon as possible.